(No. 78875.—

DONNELL PALMER *et al.*, Appellees, v. MT. VERNON TOWNSHIP HIGH SCHOOL DISTRICT 201, Appellant.

*Opinion filed January 18, 1996.—Rehearing denied April 1, 1996.*

HARRISON, J., took no part.

Thomas E. Jones and Leslie G. Offergeld, of Walker & Williams, P.C., of Belleville, for appellant.

James B. Wham, of Wham & Wham, of Centralia, and Michael J. Hanagan, of Hanagan & Dousman, of Mt. Vernon, for appellees.

Patricia J. Whitten, of Chicago (William A. Morgan, of counsel), for *amici curiae* Board of Education of the City of Chicago *et al.*

JUSTICE McMORROW delivered the opinion of the court:

In this appeal, we consider the scope of a school district's liability for injuries sustained by a student during a school-sponsored basketball game. In February 1986, Donnell Palmer (hereafter Donnell), then a senior at Mt. Vernon Township High School, was engaged in a practice session while a member of the school's varsity basketball team. During the practice, Donnell was

struck in the eye by another player. He suffered substantial injury from the incident, and eventually lost all vision in the injured eye. Donnell and his mother, Suzanne Palmer, filed suit in the circuit court of Jefferson County against the Mt. Vernon Township High School District (hereafter the school district) alleging that the school district breached, *inter alia*, its duty to warn students of the dangers of basketball and its duty to allow students to wear protective gear, such as eye wear, during athletic activities such as basketball.

Following a trial, the jury returned a verdict for the school district. However, the appellate court reversed judgment for the district and remanded the matter for a new trial. (269 Ill. App. 3d 1056.) The appellate court reasoned that certain jury instructions given by the trial court failed to adequately instruct the jury regarding the school district's duty to warn students about wearing protective gear, and the district's duty to allow students to furnish their own protective safety equipment. We granted the school district's petition for leave to appeal (145 Ill. 2d R. 315) and reverse the appellate court's decision.

Background

Donnell testified at trial that he first thought of wearing goggles during basketball activities a few years before he was injured. He knew that both professional basketball players and some members of opposing high school basketball teams wore protective eye wear during basketball games.

Donnell testified that an incident in December 1985 confirmed his belief that he should wear protective eye gear during basketball activities. That incident arose during a high school basketball tournament in which Donnell participated. During the tournament, Donnell was hit on the cheekbone by the elbow of an opposing player. However, he was not seriously injured on this occasion.

Donnell also stated that a few weeks later, one of his teammates, Eric Robinson, had protective eye wear called "Rec-Specs" during a basketball practice. Donnell borrowed the eye gear from Robinson and wore them during practice, in order to test the feel of the goggles. He stated that he had been wearing the goggles for 5 to 10 minutes during the practice when his coach, Lee Emery, told him to take them off before he hurt another player. Robinson's testimony confirmed that Donnell wore the eye gear for approximately a half hour and was then told by coach Emery to remove them. Robinson stated that the coach said the goggles should be removed because they were a distraction.

After this incident, Donnell presumed that his coach would not allow him to wear protective eye gear. At a basketball practice session approximately a month later, on February 4, 1986, Donnell was poked in the left eye by another player's finger. He sustained substantial eye injury as a result of the incident and eventually lost all sight in his eye.

Donnell stated that neither his coach nor any other high school or district official told him that he could provide his own eye wear during basketball activities. Donnell also stated that he had not seen any of his teammates use protective eye gear during games or practices. He further testified that he never informed his basketball coach, or any other official from the high school or the school district, that he feared an eye injury during basketball games or practice and therefore wanted to wear protective eye gear.

Coach Emery testified that he could not recall any basketball practice or session in the 1985-86 season in which Donnell wore protective eye gear. He also did not recall any practice session in January 1986 in which Donnell wore "Rec-Specs." One of Donnell's teammates, Tommy Hayes, similarly testified that he did not recall

any instance when Donnell wore protective eye gear to practice, nor any incident where coach Emery told Donnell or any other player not to wear protective eye gear. Coach Jim Woodward, an assistant basketball coach during the 1985-86 season who was present at the January practice session, also testified that he never saw Donnell wearing goggles during a basketball game or practice, and that he never heard coach Emery tell Donnell to remove goggles during a basketball practice.

Coach Emery and coach Woodward testified that they were not aware of any Illinois high school that furnished protective eye wear to its basketball players. Coach Emery stated that eye injuries were rare, although he had witnessed a few during his coaching career. The coach testified that Mt. Vernon Township High School basketball games during the 1985-86 season were governed by the official rules published by the National Federation of State High School Associations, and that these rules did not require the use of protective eye wear. The rules also do not specifically prohibit the use of protective eye wear, unless the referee judges such equipment to be a danger to any of the players. Coach Emery testified that he did not remember an instance where a basketball player requested to wear protective eye gear, but that he would permit a player to do so if the player feared an eye injury.

Based upon this evidence, the jury returned a verdict for the school district. The appellate court reversed and remanded for a new trial, and we allowed the school district's petition for leave to appeal.

## Analysis

The appellate court reversed the jury's verdict in favor of the school district and remanded for a new trial because of perceived error in the trial court's refusal to give the jury certain instructions offered by Donnell. The circuit court refused Donnell's jury instructions that recited the following:

"Where students are engaging in school activities, it is the duty of the school district to exercise ordinary care to warn students that they should furnish their own equipment to prevent serious injuries." Donnell's jury instruction No. 15.

"Where students are engaging in school activities, it is the duty of the school district to exercise ordinary care to allow the students to use equipment to prevent serious injuries." Donnell's jury instruction No. 16.

However, the circuit court granted Donnell's request to give the jury the following instructions:

"It was the duty of the defendant, before and at the time of the occurrence, to use ordinary care for the safety of the plaintiff. That means it was the duty of the defendant to be free from negligence." Donnell's jury instruction No. 13, Illinois Pattern Jury Instructions, Civil, No. 10.04 (3d ed. 1992) (hereafter IPI Civil 3d).

"Where students are engaging in school activities, it is the duty of the school district to exercise ordinary care to furnish equipment to the students to prevent serious injuries." (Donnell's non-IPI jury instruction No. 14, based on *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415.)

The circuit court also permitted the use of Donnell's issue instruction as follows:

"The plaintiff, Donnell Palmer, claims that he was injured and sustained damage and that the defendant was negligent in one or more of the following respects:

A. That the defendant school district did not furnish Donnell Palmer with protective eye equipment, when it knew or should have known that such an act or omission endangered his safety.

B. That the defendant school district did not warn Donnell Palmer that he should furnish his own protective eye equipment, when it knew or should have known that such an act or omission endangered his safety.

C. That the defendant school district did not allow Donnell Palmer to use protective eye equipment, when it knew or should have known that such an act or omission endangered his safety."

The appellate court reversed the jury's verdict for

the school district and remanded for a new trial. Relying principally upon *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, and *Lynch*, 82 Ill. 2d 415, the appellate court found that the defendant school district had a duty "to furnish or allow to be furnished appropriate safety equipment for the conduct of the sports activity." (269 Ill. App. 3d at 1065.) The appellate court determined that the circuit court's refusal to instruct the jury according to Donnell's jury instructions numbers 15 and 16 thus failed to provide the jury with an accurate statement of the law applicable to the case and seriously prejudiced Donnell's right to a fair trial. 269 Ill. App. 3d at 1065-66.

The school district argues that neither *Gerrity* nor *Lynch* justifies the decision reached by the appellate court. The school district contends that *Gerrity* and *Lynch* set out the scope of a school district's duty to provide adequate safety equipment for students' use during school athletic activities but did not impose upon a school district a separate and distinct duty to warn students of equipment that they should or could wear during athletic activities, or a separate and distinct duty to allow students to wear safety equipment that the students themselves have provided. Donnell responds that the duty to warn students to wear safety equipment and the duty to allow students to provide their own safety equipment are logical corollaries to the duty to furnish safety equipment that was established in *Lynch* and *Gerrity*.

A school district's duty to provide safety equipment that is necessary to protect students from serious injury during school athletic activities was expressly recognized in *Gerrity*. In that case, a high school student was severely injured while making a tackle during a school football game. He filed suit against the school district, alleging that it had provided him with a defective football helmet. The school district responded that it

was immune from liability pursuant to provisions in the School Code that shield a school teacher from liability for negligent acts undertaken during supervision or discipline of students. *Gerrity*, 71 Ill. 2d at 49-50 (discussing Ill. Rev. Stat. 1973, ch. 122, pars. 24—24, 34—84a).

This court rejected the school district's argument, reasoning that a school district cannot vicariously claim the immunity of a school teacher where it is alleged that the school district's liability is premised upon the district's independent duty to provide adequate equipment to the students. To reach this conclusion, the court reasoned that the "public policy considerations in authorizing, and indeed encouraging, teachers to have broad discretion and latitude in the former situation quite clearly do not apply" where the issue is the school district's duty to furnish adequate safety equipment to students. (*Gerrity*, 71 Ill. 2d at 52.) The court observed that "public policy considerations argue rather strongly against any interpretation which would relax a school district's obligation to insure that equipment provided for students in connection with activities of this type is fit for the purpose." (*Gerrity*, 71 Ill. 2d at 52.) "To hold school districts to the duty of ordinary care in such matters would not be unduly burdensome, nor does it appear to us to be inconsistent with the intended purposes of *** the School Code [regarding immunity of teacher for supervision or discipline of students]." *Gerrity*, 71 Ill. 2d at 52-53.

This court also recognized a school district's duty to furnish proper safety equipment to students in *Lynch*, 82 Ill. 2d 415. In that case, students had engaged in a football game on school property without the express approval of the school principal. However, the school administration was aware that the game was planned and that several teachers were coaching students for the game. This court found the evidence demonstrated

that the school district was negligent for its failure to provide safety equipment for students' use during the football game. Consequently, the school district could be held liable for head injuries sustained by a student who was not wearing a helmet when she was tackled by another player.

In so ruling, this court held that "a school district has an affirmative duty, where students are engaging in school activities, whether they are extracurricular, or formally authorized as part of the school program, to furnish equipment to prevent serious injuries." (*Lynch*, 82 Ill. 2d at 434.) The court observed that if it did not impose such a duty upon a school district, the district could avoid liability by not furnishing any safety equipment whatsoever and thereby shift to students the burden of purchasing safety equipment in order to protect themselves from injury while engaged in a school athletic activity. This would prevent students who could not afford the safety equipment from participating in the sports activity. The court observed that it was "unwilling to encourage such a result." *Lynch*, 82 Ill. 2d at 435.

Donnell's argument in the instant cause that the school district had a duty to warn him that he should wear eye gear in order to protect himself from serious harm, and that the school district had a duty to permit him to wear eye gear in order to prevent serious injury, is in conflict with this court's holdings in *Gerrity* and *Lynch*. Both of these decisions impose upon a school district the "affirmative duty, where students are engaging in school activities, whether they are extracurricular, or formally authorized as part of the school program, to furnish equipment to prevent serious injuries." (*Lynch*, 82 Ill. 2d at 434; see also *Gerrity*, 71 Ill. 2d at 52.) A duty to warn students of the advisability of wearing such equipment, and a duty to allow students

to wear such equipment if it is purchased at their own expense, would be in conflict with a school district's duty to provide such safety equipment in the first instance. A school district should not be permitted to avoid its obligation to provide appropriate safety equipment by the expedient of advising students that they should purchase such equipment at their own expense. As this court stated in *Lynch*, a student's ability to engage in a school athletic activity while wearing the appropriate safety equipment should not be dependent upon the student's financial ability to obtain such equipment. *Lynch*, 82 Ill. 2d at 434-35.

This reasoning is equally applicable to the instant cause. The school district had an obligation to provide to all students, including Donnell, the safety equipment that was reasonably necessary in order to protect players from reasonably foreseeable, serious bodily injury. The jury found that the school district had not breached this duty to furnish adequate safety equipment, and Donnell does not dispute this finding on appeal. We decline Donnell's invitation to impose upon the school district a duty to warn students that they should purchase and wear safety equipment that is necessary to protect them from foreseeable, serious bodily injury. To do so would relieve the school district of its obligation to purchase and provide necessary safety equipment, and would inequitably place upon students the burden of either providing their own safety equipment or not participating in school athletic activities.

In light of these considerations, we conclude that the trial court was correct in its refusal to give the jury Donnell's instructions numbers 15 and 16. Donnell's instruction number 15 informed the jury that the school district had the duty to "warn students that they should furnish their own equipment to prevent serious injury." This instruction was an inaccurate statement of the

law. A school district has a duty to furnish reasonably necessary safety equipment to protect students from reasonably foreseeable serious injury; the school district cannot discharge this duty by simply warning the students to purchase such equipment themselves. (*Lynch*, 82 Ill. 2d at 434-35.) Donnell's instruction number 16 was also inaccurate. It recited that the school district had the duty "to allow the students to use equipment to prevent serious injuries." However, a school district cannot merely permit students to use their own safety equipment; the school district has an affirmative obligation to provide such safety equipment for the students' use and benefit. *Lynch*, 82 Ill. 2d at 434-35.

Donnell insists that he should receive a new trial because his evidence demonstrated that he was "denied his right" to wear safety equipment while playing basketball. He appears to argue that the school district was liable because it did not have a policy of allowing students to wear additional safety equipment which might be beneficial for the students to wear if they so chose. However, there is nothing in the record before us to indicate that the school district had any policy that prevented or forbade students from wearing supplemental safety equipment during school athletic activities.

Donnell's argument fails to distinguish between the obligations of a school district and those of its teachers. A school district has a duty to furnish safety equipment, while a teacher has a separate and distinct duty to supervise the student's wearing or use of safety equipment. *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165; see also *Jastram v. Lake Villa School District 41* (1989), 192 Ill. App. 3d 599, 602-03; *Bowers v. Du Page County Regional Board of School Trustees Dist- rict No. 4* (1989), 183 Ill. App. 3d 367; *Braun v. Board of Education of Red Bud Community Unit School District No. 132* (1986), 151 Ill. App. 3d 787, 791-93.

The decision with regard to whether Donnell could wear safety eye gear during basketball practice on the day in question was a matter to be resolved by the particular instructor who was supervising Donnell's activities during the basketball practice. In this instance, that instructor was coach Emery. Coach Emery testified that he had the authority to decide whether a student should be permitted to wear supplemental safety equipment that was not provided by the school district. It is well established that teachers stand *in loco parentis* to their students, and that their supervision of students' activities is cloaked with immunity if willful and wanton misconduct by the supervising teacher is not pled and proven. (*Sidwell v. Griggsville Community Unit School District No. 4* (1992), 146 Ill. 2d 467; *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165.) Donnell never filed suit against coach Emery, however, and he does not argue that coach Emery's actions constituted willful and wanton misconduct or negligent conduct. Also, there is nothing in the record to support such an allegation. Accordingly, Donnell is not entitled to recover from the school district for the eye injury he sustained during basketball practice at issue in the instant cause. In light of this disposition, we need not address the parties' remaining arguments.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.