(No. 90701.—

JEREMY ARTEMAN *et al.*, Appellees, v. CLINTON
COMMUNITY UNIT SCHOOL DISTRICT No. 15,
Appellant.

*Opinion filed January 25, 2002.*

McMORROW, J., concurring in part and dissenting in part.
KILBRIDE, J., joined by HARRISON, C.J., dissenting.

Gregory Q. Hill, of Hughes, Hill & Tenney, L.L.C., of

Decatur, and Hinshaw & Culbertson, of Chicago (Steven M. Puiszis and Stephen R. Swofford, of counsel), for appellant.

Garry Bryan, of Ray Moss & Associates, P.C., of Clinton, for appellees.

Marilyn F. Johnson, of Chicago (William A. Morgan, of counsel), for *amici curiae* Illinois Association of School Boards *et al.*

JUSTICE FITZGERALD delivered the opinion of the court:

The plaintiffs, Jeremy Arteman and his father Steve Arteman, filed a personal injury complaint against the Clinton Community Unit School District No. 15 (the School District), alleging, *inter alia*, that the School District was negligent in failing to provide roller-blade safety equipment for Jeremy's physical education class. The School District moved to dismiss this complaint, asserting that it was entitled to immunity under sections 2—201 and 3—108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/2—201, 3—108(a) (West 2000)). The De Witt County circuit court granted the School District's motion to dismiss, but the appellate court reversed (317 Ill. App. 3d 453).

The central issue in this case is whether the plaintiffs' allegations that the School District negligently failed to provide safety equipment fell within the protective scope of the discretionary immunity provided by section 2—201 of the Act. We reverse the appellate court and affirm the circuit court.

BACKGROUND

Count I of the plaintiffs' four-count complaint charged the School District with negligence. According to

the plaintiffs, the School District required all high school students to take a physical education class. On March 20, 1998, the students in Jeremy's physical education class were expected to run laps or use roller blades on the wooden gym floor under the supervision of two teachers. The students opting to roller blade paid $7, and the School District provided roller blades with a toe brake, which the plaintiffs characterized as an experimental design. The School District did not provide safety equipment such as shin guards, elbow guards, knee guards, helmets, or gloves. Jeremy chose to roller blade. During class, he fell and broke two bones in his right leg. The plaintiffs asserted that the School District was negligent because it:

> "a. Failed to provide the necessary safety equipment for rollarblading [sic] such as but not limited to helmets, shinguards, kneeguards, elbow pads;
>
> b. Failed to provide rollarblades [sic] that were suitable for their intended use."

According to the plaintiffs, this purported negligence caused Jeremy's injury. The plaintiffs' complaint also included a "Wilful and Wanton Misconduct" count which tracked the allegations of the negligence count, as well as two corresponding counts under the Rights of Married Persons Act (750 ILCS 65/15 (West 2000)).

The School District filed a motion to dismiss, contending that sections 2—201 and 3—108(a) of the Act defeated the plaintiffs' claims. The trial court dismissed the plaintiffs' complaint, holding that section 3—108(a), which provides immunity from claims alleging a failure to supervise, applied and that the plaintiffs failed to allege sufficient facts to establish willful and wanton misconduct, an exception to section 3—108(a) immunity.

The appellate court held that section 3—108(a) did not apply because the plaintiffs' complaint did not involve allegations that the School District failed to supervise Jeremy. 317 Ill. App. 3d at 456. Instead, the appellate

court characterized the gist of the plaintiffs' complaint as negligent failure to provide appropriate equipment. 317 Ill. App. 3d at 456. The appellate court discussed discretionary immunity and observed that "section 2—201 of the Act—standing alone—would provide immunity to the School District in this case." 317 Ill. App. 3d at 458. However, the appellate court noted that in *Gerrity v. Beatty*, 71 Ill. 2d 47 (1978), *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415 (1980), and *Palmer v. Mt. Vernon Township High School District 201*, 169 Ill. 2d 551 (1996), this court "recognized a cause of action for a school district's failure to fulfill its independent duty to provide appropriate safety equipment to students." 317 Ill. App. 3d at 459-60. The appellate court reasoned that the policy considerations outlined in *Gerrity* and its progeny, which militated against immunity under the School Code, applied with equal force to immunity under the Act. 317 Ill. App. 3d at 460. The appellate court hesitantly concluded that section 2—201 did not defeat the plaintiffs' claims, reversing and remanding "in the hope that the supreme court, in this case or some other, will address the immunities and duties of school districts under the Act." 317 Ill. App. 3d at 460.

We granted the plaintiffs' petition for leave to appeal. See 177 Ill. 2d R. 315.[1]

## ANALYSIS

Section 2—619(a)(9) of the Code of Civil Procedure permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter

---

[1]We granted leave to the Illinois Association of School Boards, the Illinois Association of School Administrators, the Illinois Governmental Association of Pools, the Illinois Park and Recreation Association, and the Chicago Board of Education to file a brief as *amici curiae* in support of the School District. See 155 Ill. 2d R. 345.

avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1998). Affirmative matter in this context means a defense which negates the plaintiff's cause of action. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994); see *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). Immunity under the Act is affirmative matter properly raised in a section 2—619(a)(9) motion to dismiss. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). Our review of a section 2—619 dismissal is *de novo*. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997).

We frequently have discussed the history of sovereign immunity in Illinois, and we need not reiterate it at length here. The 1970 Illinois Constitution abolished sovereign immunity, except as the General Assembly may provide (see Ill. Const. 1970, art. XIII, § 4), and the legislature exercised this prerogative by retaining the 1965 Local Governmental and Governmental Employees Tort Immunity Act. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 344 (1998); see *Epstein*, 178 Ill. 2d at 375. The Act serves to protect local public entities, including school boards and school districts (745 ILCS 10/1—206 (West 1998)), and public employees from liability arising from the operation of government (745 ILCS 10/1—101.1(a) (West 1998)). By providing immunity, the General Assembly sought to prevent the dissipation of public funds on damage awards. *Bubb*, 167 Ill. 2d at 378.

The Act grants only immunities and defenses. 745 ILCS 10/1—101.1(a) (West 1998). That is, the Act does not create duties, but merely articulates which of the delineated immunities apply to certain common law duties. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 412 (1991); see *Epstein*, 178 Ill. 2d at 381 ("The legislature, in the Tort Immunity Act, adopted the gen-

eral principle that local governmental units are liable in tort, 'but limited this with an extensive list of immunities based on specific government functions' [citations]"). Accordingly, whether a local public entity owed a duty of care and whether that entity enjoyed immunity are separate inquiries. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388 (1996). Once we determine a duty exists, we must then address whether the Act applies. See *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001).

The School District contends that the appellate court erred in concluding the duty we recognized in *Gerrity* defeated immunity under the Act. Before deciding whether the Act provides immunity, we must discuss the School Code immunity provisions as construed by *Gerrity* and its progeny.

Sections 24—24 and 34—84a of the School Code direct teachers and other educational employees to maintain discipline in schools. These sections also provide, "In all matters relating to the discipline in and conduct of the schools and the school children, [educators] stand in the relation of parents and guardians to the pupils." 105 ILCS 5/24—24, 34—84a (West 2000). Accordingly, these sections grant educators the same immunity enjoyed by parents. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 388 (1998). In *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 173 (1976), we held that "sections 24—24 and 34—84a confer upon teachers and other certified educational employees immunity from suits for negligence arising out of 'matters relating to the discipline in and conduct of the schools and school children.' In order to impose liability against such educators, a plaintiff must prove wilful and wanton misconduct."

We addressed the scope of School Code immunity in *Gerrity v. Beatty*, 71 Ill. 2d 47 (1978). In *Gerrity*, a high

school student was severely injured while making a tackle during a junior varsity football game. The student filed a personal injury complaint alleging that his school district negligently furnished an ill-fitting and inadequate helmet. The trial court granted the school district's motion to dismiss under section 34—84a of the School Code. We allowed the student's motion to transfer his appeal to this court.

We stated that sections 24—24 and 34—84a of the School Code reflect a legislative determination that school discipline depends upon personal relationships between teachers and students, and we noted that these relationships would be jeopardized if teachers were subject to negligence claims for conduct occurring in the exercise of their disciplinary authority. *Gerrity*, 71 Ill. 2d at 51. We further noted, however, that the immunity recognized in *Kobylanski* concerned a direct teacher-student relationship and the exercise of the teacher's control over the student's conduct or physical movement. *Gerrity*, 71 Ill. 2d at 51. We concluded:

"[The student's negligence complaint] did not allege negligence arising out of the teacher-student relationship in matters relating to the teacher's personal supervision and control of the conduct or physical movement of the student, but instead alleged negligence in connection with what we consider to be the separate function of furnishing equipment which was alleged to be inadequate, ill fitting and defective and which was known, or which in the exercise of ordinary care should have been known, to be liable to cause injury to the plaintiff. The public policy considerations in authorizing, and indeed encouraging, teachers to have broad discretion and latitude in the former situation quite clearly do not apply with as much force to the latter. On the contrary, public policy considerations argue rather strongly against any interpretation which would relax a school district's obligation to insure that equipment provided for students in connection with activities of this type is fit for the purpose. To hold school

districts to the duty of ordinary care in such matters would not be unduly burdensome, nor does it appear to us to be inconsistent with the intended purposes of sections 24—24 and 34—84a of the School Code." *Gerrity*, 71 Ill. 2d at 52-53.

In *Lynch*, a high school student fractured her nasal bone when she was struck in the face and knocked to the ground by an opposing player during a girls' "powder-puff" football game. The student filed a personal injury complaint alleging that her local board of education negligently failed to provide protective equipment. The jury found the board of education liable, and the appellate court affirmed.

Initially, we observed that the parties never raised the applicability of the Act. *Lynch*, 82 Ill. 2d at 423. We then discussed *Gerrity* and held that "a school district has an affirmative duty, where students are engaging in school activities, whether they are extracurricular, or formally authorized as part of the school program, to furnish equipment to prevent serious injuries." *Lynch*, 82 Ill. 2d at 434. We reasoned that a contrary result would encourage the board to skirt liability by not furnishing equipment and forcing students to provide for their own safety: "In that way, only students who could afford their own equipment would be able to engage in school-connected sports activities." *Lynch*, 82 Ill. 2d at 435.

In *Palmer*, a high school student was struck in an eye by another player during a varsity basketball practice. The student eventually lost vision in the injured eye and filed a personal injury complaint alleging his school district negligently failed to allow him to wear protective eyewear. The trial court refused two jury instructions from the student regarding the school district's putative duty to warn students that they should furnish their own safety equipment and the school district's putative duty to allow students to use safety equipment, and the

jury returned a verdict for the school district. The appellate court reversed.

We discussed *Gerrity* and *Lynch* and held that the trial court correctly refused the student's instructions: "A duty to warn students of the advisability of wearing such equipment, and a duty to allow students to wear such equipment if it is purchased at their own expense, would be in conflict with a school district's duty to provide such safety equipment in the first instance." *Palmer*, 169 Ill. 2d at 559-60. We concluded that the school district had an obligation to provide to all students "the safety equipment that was reasonably necessary in order to protect players from reasonably foreseeable, serious bodily injury." *Palmer*, 169 Ill. 2d at 560. See also *Sidwell v. Griggsville Community Unit School District No. 4*, 146 Ill. 2d 467, 473 (1992) (a complaint alleging the independent negligence of a school district in maintaining its premises is not barred by section 24—24 or 34—84a of the School Code).

As the appellate court here recognized, *Gerrity* and its progeny held that school districts have a duty to provide safety equipment, and the School Code offers no immunity from allegations of negligent failure to provide such equipment. However, the tort immunity provisions of the School Code and the Tort Immunity Act are "independent enactments." *Cooney v. Society of Mt. Carmel*, 75 Ill. 2d 430, 434 (1979); accord *Henrich*, 186 Ill. 2d at 389 ("the immunity provided by section 24—24 of the School Code did not derive from the immunity provided by the Tort Immunity Act"). We now turn to the Act.

Initially, we agree with the appellate court's holding that section 3—108(a) of the Act does not apply to the plaintiffs' allegations. See 317 Ill. App. 3d at 456. Section 3—108(a) provides immunity for injuries "caused by a failure to supervise an activity on or the use of any public property." 745 ILCS 10/3—108(a) (West 1998); see

*Henrich*, 186 Ill. 2d at 383; *Epstein*, 178 Ill. 2d at 379. Here, the plaintiffs charged that the School District failed to provide necessary and suitable roller-blade equipment. This claim does not involve supervision.

The School District chiefly contends that section 2—201 shielded its decision not to provide roller-blade safety equipment as a discretionary policy determination. Section 2—201 of the Act offers the most significant protection afforded to public employees under the Act. D. Baum, *Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act*, 1966 U. Ill. L.F. 981, 994. Section 2—201 provides:

> "Except as otherwise provided by Statute, a public em-
> ployee serving in a position involving the determination of
> policy or the exercise of discretion is not liable for an injury
> resulting from his act or omission in determining policy
> when acting in the exercise of such discretion even though
> abused." 745 ILCS 10/2—201 (West 1994).

Because "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable" (see 745 ILCS 10/2—109 (West 1998)), this broad discretionary immunity applies to the entities themselves.

We have held that section 2—201 immunity is concerned with both the position held by the municipal employee and the action performed by that employee. *Harinek*, 181 Ill. 2d at 341. That is, the employee's position may involve either determining policy or exercising discretion, but the employee's "act or omission must be both a determination of policy and an exercise of discretion." *Harinek*, 181 Ill. 2d at 341; see *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992) (policy decisions are "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests"); *Snyder v. Curran Township*, 167 Ill. 2d 466, 474 (1995) ("discretionary acts are those which are unique to a particular

public office"); see also *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466 (2001).

Our appellate court previously has addressed whether section 2—201 insulates school districts from allegations of failure to provide safety equipment. In *Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367 (1989), a student was injured when she fell from a rope ladder during gym class. The student's mother filed a complaint against the local board of school trustees, alleging that the board negligently failed to provide adequate matting and other equipment. The board filed a motion to dismiss, claiming discretionary immunity under the Act, and the trial court granted this motion.

The appellate court held that section 2—201 provided immunity because the provision of equipment is a discretionary act. *Bowers*, 183 Ill. App. 3d at 379. The court disagreed with *Thomas v. Chicago Board of Education*, 60 Ill. App. 3d 729, 734 (1978), *rev'd on other grounds*, 77 Ill. 2d 165 (1979), which held that the furnishing of equipment was a separate function from the exercise of discretionary authority. *Bowers*, 183 Ill. App. 3d at 379. The court noted that the School Code provides that school boards have the power to direct what branches of study shall be taught and what apparatus shall be used (see 105 ILCS 5/10—20.8 (West 2000)), but "it does not direct that the Board is to use or supply particular equipment." *Bowers*, 183 Ill. App. 3d at 379.

In *McGurk v. Lincolnway Community School District No. 210*, 287 Ill. App. 3d 1059 (1997), a student suffered severe head injuries during a football game. The student's mother filed a personal injury complaint against the school district, alleging the district breached its duty of care when it furnished the student with a football helmet, but subsequently modified the helmet's existing safety system and replaced it with a static face guard. The

school district filed a motion to dismiss, claiming immunity under section 2—201 of the Act. The trial court denied the motion but permitted the school district to appeal under Supreme Court Rule 308.

The appellate court held that section 2—201 provided immunity because the selection and modification of specific athletic equipment involve "a degree of discretion." *McGurk*, 287 Ill. App. 3d at 1062. The court stated that *Gerrity* and its progeny addressed school district immunity only under the School Code, not the Act. *McGurk*, 287 Ill. App. 3d at 1061. The Act and the School Code are different sources of immunity. *McGurk*, 287 Ill. App. 3d at 1062, citing *Kobylanski*, 63 Ill. 2d at 174. See *Johnson v. Decatur Park District*, 301 Ill. App. 3d 798, 809 (1998) (a park district tumbling coach's decision regarding the necessity of safety equipment was a discretionary policy decision under *Harinek*).

Similarly, the appellate court here held that, pursuant to *Harinek*, the School District's decision not to provide roller-blade safety equipment was a discretionary policy determination. 317 Ill. App. 3d at 458. The appellate court concluded:

"[T]he School District's decision regarding the provision of roller blading equipment during a physical education class, including the type of roller blades to be used, involves a determination of policy within the meaning of section 2—201 of the Act. The School District must consider a variety of factors, including (1) the cost and availability of various types of roller blading equipment; (2) the number of students who may choose to participate in the activity; and (3) the students' varying skill levels. The School District must then balance those interests against its resources and reach a decision that accomplishes seemingly incompatible objectives—student safety and cost effectiveness. This is a complex decision-making process that requires the balancing of competing interests and the making of a judgment that will satisfy those interests most effectively." 317 Ill. App. 3d at 457-58.

The appellate court also concluded that the School District's decision regarding the provision of roller-blade equipment was an exercise of discretion: "the making of a decision about whether or how to perform an act is generally discretionary." 317 Ill. App. 3d at 458. Nonetheless, the appellate court ultimately held that the policy considerations outlined in *Gerrity* and its progeny trumped the immunity provided in section 2—201. 317 Ill. App. 3d at 460.

Though the result it reaches is appealing, the appellate court's holding impermissibly elevates a common law duty over an applicable statutory immunity. See *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 50 (1998) (the judicially created "special duty" exception cannot override the Act without violating, *inter alia*, the separation of powers doctrine). *Gerrity* and its progeny laudably recognized an obligation for school districts to provide safety equipment reasonably necessary to protect against serious, foreseeable injuries (see *Palmer*, 169 Ill. 2d at 560); but, as we have repeatedly noted, the existence of a duty and the existence of an immunity remain separate issues (see *CDG Enterprises*, 196 Ill. 2d at 490). We agree with the School District and hold that its decision not to provide roller-blade safety equipment was a discretionary policy determination. Section 2—201 provides immunity against the plaintiff's allegations.

We acknowledge that, under this view of the Act, a school district would enjoy immunity if, for example, it provided its football players with leather helmets or, worse yet, no helmets at all. Public policy considerations weigh strongly against any interpretation of the Act which would relax school districts' unstinting, but not unreasonably burdensome, duty to provide safety equipment to this state's public schoolchildren. The plain language of section 2—201, however, is unambiguous (*In re Chicago Flood Litigation*, 176 Ill. 2d 179, 196 (1997)),

and we lack the power to restrict the Act's protective scope in order to protect students (see *Henrich*, 186 Ill. 2d at 394 ("The responsibility for the justice or wisdom of legislation rests upon the legislature"); *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220 (1983) (statutes should not be rewritten by this court to conform to its idea of public policy)). The inescapable conclusion we reach today highlights the desperate need for legislative attention to the scope of discretionary immunity in this context.

## CONCLUSION

For the reasons we have discussed, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

> *Appellate court judgment reversed;*
> *circuit court judgment affirmed.*

JUSTICE McMORROW, concurring in part and dissenting in part:

The central issue presented in this appeal is whether the defendant School District is immune from liability under section 2—201 of the Tort Immunity Act (745 ILCS 10/2—201 (West 2000)) for injuries suffered by the minor plaintiff during his physical education class. I concur with the majority's holding that section 2—201 of the Act provides immunity to the School District against plaintiff's negligence claims. However, because the majority's opinion also affirms the dismissal of those claims in plaintiffs' complaint which are premised on allegations that the School District engaged in willful and wanton misconduct, I respectfully dissent from that portion of the majority's holding.

Plaintiffs, Jeremy Arteman and his father Steve Artemen, filed a four-count personal injury complaint against Clinton Community Unit School District No. 15 after Jeremy suffered two broken bones when he fell

while participating in a roller blading session during a physical education class. Plaintiffs generally alleged in their complaint that the defendant School District provided the students with roller blades that were of "experimental design," in that the braking mechanism was located at the toe of the boot instead of at the heel. Count I of the complaint alleged negligence on the part of the School District for failing to provide either "the necessary safety equipment for [roller blading] such as but not limited to helmets, shinguards, kneeguards [and] elbow pads" or "[roller blades] that were suitable for their intended use." Count II of the complaint, also a negligence claim, was brought by Steve Arteman under the Rights of Married Persons Act (750 ILCS 65/15 (West 1996)) and sought recovery of his son's medical expenses. Count III of the complaint mirrored the allegations in count I, but alleged that the School District's failure to provide necessary roller-blading equipment constituted willful and wanton misconduct. Count IV of the complaint mirrored the Rights of Married Persons Act claim pled in count II, but was premised on a willful and wanton theory of liability.

The defendant School District moved to dismiss plaintiffs' complaint in its entirety, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1998)), on the basis that it was completely immune from liability under various provisions of the Tort Immunity Act. The circuit court granted defendant's motion to dismiss plaintiffs' complaint on Tort Immunity Act grounds. The appellate court reversed the judgment of the circuit court.

Therefore, before this court is the question of the propriety of the dismissal of plaintiffs' complaint in its entirety, including those counts premised on a willful and wanton theory of liability. I continue to adhere to my position that willful and wanton misconduct is not

shielded by the immunity contained in section 2—201 of the Tort Immunity Act. For the reasons more fully stated in my separate opinions in *Barnett v. Zion Park District*, 171 Ill. 2d 378, 399 (1996) (McMorrow, J., dissenting), *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 213 (1997) (McMorrow, J., concurring in part and dissenting in part); *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 353 (1998) (McMorrow, J., concurring in part and dissenting in part), and *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 501 (2001) (McMorrow, J., concurring in part and dissenting in part), there are cogent reasons why the rationale underlying grants of governmental immunity for simple negligence should not be impliedly expanded to reach willful and wanton or intentional misconduct. It remains my belief that where the Tort Immunity Act is silent on the question of whether intentional governmental misconduct is exempt from immunity, it should not be concluded that such silence translates into an affirmative intent on the part of the legislature to cloak local governmental entities and their employees with unconditional immunity.

This is especially true with respect to the grant of immunity from liability for injuries resulting from an exercise of discretion afforded under section 2—201 of the Tort Immunity Act. As I explained in my separate opinion in *In re Chicago Flood*, 176 Ill. 2d at 214 (McMorrow, J., concurring in part and dissenting in part), because "good faith is a component of discretionary immunity," section 2—201 of the Act does not shield willful and wanton misconduct. See also *Village of Bloomingdale*, 196 Ill. 2d at 509 n.1 (McMorrow, J., concurring in part and dissenting in part). Accordingly, the two counts in plaintiffs' complaint premised upon a willful and wanton theory of liability should not be dismissed, and, instead, should be allowed to go forward. Therefore, I respectfully dissent.

JUSTICE KILBRIDE, dissenting:

The majority's opinion represents a departure from a previously unbroken line of this court's precedent. We have long held that a school district has an affirmative duty to provide safety equipment to protect students from serious injury during school athletic activities. See *Gerrity v. Beatty*, 71 Ill. 2d 47, 52 (1978); *Thomas v. Chicago Board of Education*, 77 Ill. 2d 165, 170 (1979); *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 434 (1980); *Palmer v. Mt. Vernon Township High School District 201*, 169 Ill. 2d 551, 557 (1996). We have likewise held that a school district does not enjoy immunity from liability for injuries allegedly arising from a breach of this duty to provide safety equipment. *Gerrity*, 71 Ill. 2d at 52; *Thomas*, 77 Ill. 2d at 170; *Palmer*, 169 Ill. 2d at 558. Through its decision in this case, the majority has (1) departed from the plain language of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/2—201, 3—108(a) (West 2000)); (2) overlooked the parameters of the individual policymaking requirement of section 2—201 of the Act; and (3) effectively abrogated a school district's duty to provide safety equipment for its students. I, therefore, respectfully dissent.

PLAIN LANGUAGE

Section 2—201 provides:

> "*Except as otherwise provided by Statute, a public employee* serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Emphasis added.) 745 ILCS 10/2—201 (West 2000).

The phrase "[e]xcept as otherwise provided by Statute" indicates that the legislature contemplated the existence of conflicting statutory mandates that may obviate application of section 2—201. In this case, such statutory

authority exists in sections 24—24 and 34—84a of the School Code (105 ILCS 5/24—24, 34—84a (West 2000)). As indicated by the majority, we addressed the scope of immunity under sections 24—24 and 34—84a of the School Code in *Gerrity* and determined that those sections did not affect a school district's obligation to supply safety equipment. *Gerrity*, 71 Ill. 2d at 52-53. As we stated in *Palmer*, " '[t]o hold school districts to the duty of ordinary care in such matters [is] not *** unduly burdensome.' " *Palmer*, 169 Ill. 2d at 558, quoting *Gerrity*, 71 Ill. 2d at 52-53. More importantly, contrary to the majority's assertion (198 Ill. 2d at 487), the appellate court decision in this case does not elevate a common law duty over an applicable statutory immunity. Immunity pursuant to the applicable statutory authority (*i.e.*, the School Code) simply does not exist in this particular factual situation.

Moreover, the majority has also departed from the plain language of the Act by allowing the school district to raise section 2—201 immunity when such immunity is specifically afforded to "public employee[s]," immunizing each individual policy-making decision. The majority has overlooked this language in the Act and has allowed the school district to enjoy blanket immunity, regardless of the acts or omissions of the district's individual employees. While it is true that a public entity may not be held liable for an injury resulting from an act or omission of its employee where the employee is not liable (745 ILCS 10/2—109 (West 1998)), as we stated in *Palmer* in relation to the School Code, a school district cannot vicariously claim the immunity of its émployee where it is alleged that the school district's liability is premised upon the district's independent duty to provide adequate safety equipment. *Palmer*, 169 Ill. 2d at 558. Although the majority is correct that the School Code and the Act provide separate immunities to public employees, I can discern

no reason to treat the immunity afforded under the Act differently than that afforded by the School Code in this context, and neither has the majority provided such a basis.

## POLICYMAKING

By allowing the school district to raise directly the immunity defense afforded to its employees under the Act, the majority has also circumvented a bedrock principle of section 2—201 immunity. In order to be immune under section 2—201, the policymaking decisions must be decisions that require the employee " 'to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 342 (1998), quoting *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992). Under the majority's decision, it will never be necessary for a public entity to present evidence that such reasoned deliberation was undertaken. In fact, it will not be necessary for the public entity to show that it even considered the issue at all. Any decision made by a municipal employee whose responsibilities include the determination of policy will be automatically immune from liability. Such blanket immunity is certainly not contemplated by the Act. *Harinek*, 181 Ill. 2d at 355 (Harrison, J., dissenting).

I acknowledge that it would be unduly burdensome for a public entity to support every one of its policymaking decisions with evidence of an involved deliberative process. Nonetheless, the importance of the particular issue at hand simply necessitates that the school district somehow demonstrate that there was an affirmative decision not to provide safety equipment for a school-related athletic activity. Otherwise, by conferring blanket immunity to public entities, we will be encouraging school districts and other public entities to take no action concerning a whole host of important safety issues.

494

## DUTY TO PROVIDE SAFETY EQUIPMENT

The majority acknowledges the disastrous consequences of its decision, remarking that under its "view of the Act, a school district would enjoy immunity if, for example, it provided its football players with leather helmets or, worse yet, no helmets at all." 198 Ill. 2d at 487. The majority then attempts to justify that conclusion as "inescapable" under the existing state of the law. 198 Ill. 2d at 488. While I agree with the majority's assessment that legislative attention to the scope of discretionary immunity is desperately needed, I take no solace in the fact that the legislature may remedy the situation. The outcome of this particular case was controlled by a line of precedent implicitly overturned by the majority. By its decision, the majority has effectively abrogated a school district's duty to provide safety equipment to protect students from serious injury during school athletic activities. For this reason and for the reasons expressed above, I respectfully dissent.

CHIEF JUSTICE HARRISON joins in this dissent.