# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Hascall v. Williams*, 2013 IL App (4th) 121131

---

| | |
|---|---|
| Appellate Court Caption | VILMA HASCALL, Individually; and C.H., a Minor, Through Her Mother and Next Friend, Vilma Hascall, Plaintiffs-Appellants, v. PRESTON L. WILLIAMS, JR., SANDY COOPER, and URBANA SCHOOL DISTRICT NO. 116 BOARD OF EDUCATION, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-1131 |
| Filed | September 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Section 2-201 of the Tort Immunity Act provided defendant school district and members of its staff with immunity from liability for plaintiffs' allegations that defendants failed to properly respond to plaintiff student, who was bullied by her classmates, and that immunity was not subject to the willful and wanton conduct exception in section 2-202 of the Act. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 12-L-16; the Hon. Michael Q. Jones, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Gerald W. Smith (argued), of Smith Law Firm, P.C., of Mahomet, for appellants.

Dennis L.Weedman and Belinda Becker (argued), both of Robbins Schwartz Nicholas Lifton & Taylor, of Collinsville, for appellees.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1     In July 2012, plaintiffs, Vilma Hascall (Hascall), individually, and C.H., a minor, through her mother and next friend, Vilma Hascall, filed an 11-count second amended complaint against defendants, Preston L. Williams, Jr. (Williams), Sandy Cooper (Cooper), and the Urbana School District No. 116 Board of Education (Board). Plaintiffs alleged C.H. was bullied by classmates and defendants failed to appropriately respond. Defendants filed a motion to dismiss and the circuit court dismissed the complaint with prejudice. We affirm.

¶ 2                              I. BACKGROUND

¶ 3     On July 2, 2012, plaintiffs filed an 11-count second amended complaint against defendants for alleged violations of the Illinois School Code (School Code) (105 ILCS 5/1-1 to 36-1 (West 2010)) (counts I, II, XI); fraud (counts III, IV, V); intentional infliction of emotional distress (counts VI, VII, VIII); and retaliation (count X). Plaintiffs voluntarily dismissed count IX.

¶ 4     According to the complaint, C.H. was a fourth-grade student attending Thomas Paine Elementary School (Thomas Paine). On August 18, 2011, Hascall reported to Cooper, the principal of Thomas Paine, a "bullying situation" involving C.H. and classmates M.J., I.H., and A.M. According to Hascall, M.J., I.H., and A.M. had bullied C.H. since kindergarten. Hascall requested that C.H. be reassigned to a different fourth-grade classroom. In a letter dated August 18, 2011, Cooper assured Hascall that "we take reports of bullying very seriously." Cooper stated she would "address the situation with the girls and notify the parents of the conversation." Cooper attached to the letter "the school district policy." C.H. was not reassigned to a different fourth-grade classroom.

¶ 5     On August 20, 2011, Hascall requested a meeting with school district superintendent

Williams, Cooper, C.H.'s classroom teacher, "the police," and the parents of M.J., I.H., and A.M. The following day, Hascall met with Williams and Cooper, who assured Hascall that they would contact the parents ("or words to that effect") of M.J., I.H., and A.M.

¶ 6 On October 14, 2011, M.J. and I.H. verbally harassed C.H. when she withdrew from a game of tag. M.J., I.H., and A.M. followed C.H. into a school restroom, blocking the exit and continuing to "harass, intimidate, and threaten C.H." C.H. reported the incident to Hascall, who contacted the police. The following day, Cooper telephoned Hascall and advised she would contact the girls' parents and "take appropriate disciplinary action."

¶ 7 On November 21, 2011, I.H. approached C.H. in the classroom, slapped a book C.H. was holding, and "threatened C.H." M.J., I.H., and A.M. again followed C.H. into the school restroom. C.H. entered a stall and the girls kicked open the door of the stall, injuring C.H. The girls "threatened C.H. by stating, 'I'm going to kill you' or similar words." C.H. reported the incident to Hascall, who contacted the police.

¶ 8 On November 22, 2011, an investigating officer spoke to the parents of M.J., I.H., and A.M. The parents reported never having been told their child had bullied another student prior to November 22, 2011. Cooper allegedly told the investigating officer that she had no knowledge of C.H. being bullied prior to October 2011.

¶ 9 On November 28, 2011, Hascall again requested a meeting with Williams, Cooper, C.H.'s classroom teacher, "the police," and the parents of M.J., I.H., and A.M. Williams denied Hascall's request, stating, "[w]e will handle this situation." On December 6, 2011, Hascall addressed the Board regarding bullying at Thomas Paine.

¶ 10 C.H. alleged these incidents led to (1) difficulty sleeping, (2) nightmares, (3) physical injury, (4) physical illness, (5) stomachaches, (6) headaches, (7) worsening asthma, (8) mental anguish, and (9) emotional distress. Hascall alleged these incidents led to (1) severe anxiety, (2) mental anguish, and (3) "significant emotional distress over the health and safety of C.H. while at school" and the inaction by school personnel.

¶ 11 On October 4, 2012, defendants filed a combined motion to dismiss plaintiffs' complaint under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2010)). Under section 2-615, defendants argued the second amended complaint failed to state a cause of action upon which relief could be granted. Under section 2-619(a)(9), defendants asserted they were immune from liability under sections 2-201 and 2-109 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201, 2-109 (West 2010)). Defendants attached affidavits of Williams and Cooper to a memorandum in support of their section 2-619 motion to dismiss. Williams averred, in part, as follows:

"3. As Superintendent I am responsible for determining school district policy in many areas, including that in the areas of student relations and student discipline; and I exercise discretion in the determination and administration of such policies.

* * *

6. Board Policy 7:180 defines prohibited bullying activities and requires the development of a program to implement the policy. I have determined that each

attendance center principal shall be responsible for implementing this policy at the building level so grade level appropriate programs can be more effectively developed. ***

7. Generally, when an allegation of student bullying surfaces at my level, I must: 1) assess the credibility of the allegations; 2) assess the severity and frequency of the actions; 3) assess the nature of the actions, i.e., physical and/or verbal; 4) assess the age, grade level and maturity level of the students involved; 5) assess the disciplinary history of the students involved; 6) assess which building staff to appropriately involve in the process; 7) assess whether to monitor the situation as needed; 8) take appropriate disciplinary action against students when necessary. I followed this very process during the 2011-2012 school year when allegations concerning C.H. surfaced."

Cooper averred, in part, as follows:

"3. As Principal I am responsible for determining school district policy in many areas, including that in the areas of student relations and student discipline; and I exercise discretion in the determination and administration of such policies.

4. Among my duties as Principal, I am responsible for the overall operation of Thomas Paine School consistent with the mission and goals of the Urbana School District. The scope of those duties includes instructional programs that span traditional academics, fine arts, and social emotional learning. Examples of other significant duties include overseeing building maintenance, program evaluation, personnel management, office operations, and emergency procedures. My duties as Principal also entail that I respond to allegations of student bullying and administer discipline to students within my attendance center.

***

6. Board Policy 7:180 defines prohibited bullying activities and requires the development of a program to implement the policy. In Urbana School District, each attendance center principal is responsible for implementing a bullying prevention program and updating it annually. ***

***

8. Generally, when an allegation of student bullying surfaces at my level, I must: 1) assess the credibility of the allegations; 2) assess the severity and frequency of the actions; 3) assess the nature of the actions, i.e., physical and/or verbal; 4) assess the age, grade level and maturity level of the students involved; 5) assess the disciplinary history of the students involved; 6) assess which building staff to appropriately involve in the process; 7) develop a specific plan for addressing the situation; 8) continue to monitor the effectiveness of the plan and make necessary adjustments to the plan as needed; 9) take appropriate disciplinary action against students when necessary; and 10) assess how my decision may affect the students. I followed this very process during the 2011-2012 school year when allegations concerning C.H. surfaced."

¶ 12    Following a hearing in November 2012, the trial court granted defendants' motion to dismiss plaintiffs' second amended complaint with prejudice.

-4-

¶ 13    This appeal followed.

¶ 14                            II. ANALYSIS

¶ 15    Plaintiffs argue the trial court erred in granting defendants' motion to dismiss plaintiffs' second amended complaint with prejudice. We disagree.

¶ 16    Section 2-619(a)(9) of the Code provides a defendant may file a motion for dismissal of the action on the grounds "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). Section 2-619(a)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact relating to the affirmative matter early in the litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367, 799 N.E.2d 273, 278 (2003).

¶ 17    A motion for involuntary dismissal under section 2-619(a)(9) of the Code admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint bars or defeats the cause of action. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361, 919 N.E.2d 926, 931-32 (2009); *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120, 896 N.E.2d 232, 238 (2008); *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8, 953 N.E.2d 415. In a section 2-619(a) motion, the movant is essentially saying " 'Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim.' " *Winters v. Wangler*, 386 Ill. App. 3d 788, 792, 898 N.E.2d 776, 779 (2008). When ruling on the section 2-619(a)(9) motion, the court construes the pleadings "in the light most favorable to the nonmoving party" (*Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55, 962 N.E.2d 418) and should only grant the motion "if the plaintiff can prove no set of facts that would support a cause of action" (*Snyder*, 2011 IL 111052, ¶ 8, 953 N.E.2d 415). A section 2-619(a)(9) motion dismissal is reviewed *de novo*. *Kean*, 235 Ill. 2d at 361, 919 N.E.2d at 932.

¶ 18    Plaintiffs argue that the trial court erred in finding defendants immune from liability under sections 2-201 and 2-109 the Tort Immunity Act (745 ILCS 10/2-201, 2-109 (West 2010)).

¶ 19    The Tort Immunity Act adopted the general principle " 'that local governmental units are liable in tort but limited this [liability] with an extensive list of immunities based on specific government functions.' " *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 43, 697 N.E.2d 699, 707 (1998) (quoting *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 506, 565 N.E.2d 654, 658 (1990)). The Tort Immunity Act is in derogation of the common law and, therefore, must be strictly construed against the public entities involved. *Aikens v. Morris*, 145 Ill. 2d 273, 278, 583 N.E.2d 487, 490 (1991). "Unless an immunity provision applies, municipalities are liable in tort to the same extent as private parties." *Van Meter*, 207 Ill. 2d at 368-69, 799 N.E.2d at 273. To bar plaintiffs' recovery, governmental entities bear the burden of properly raising and proving that they are immune under the Tort Immunity Act. *Van Meter*, 207 Ill. 2d at 368-69, 799 N.E.2d at 279.

¶ 20    The Tort Immunity Act grants only immunities and defenses; it does not create duties. Rather, the Tort Immunity Act merely codifies existing common-law duties, to which the delineated immunities apply. *Arteman v. Clinton Community Unit School District No. 15*,

198 Ill. 2d 475, 479, 763 N.E.2d 756, 760 (2002); *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490, 752 N.E.2d 1090, 1096 (2001). Therefore, whether a local public entity owed a duty of care and whether that entity enjoyed immunity are separate issues. Once a court determines that a duty exists, it then addresses whether the Tort Immunity Act applies. *Arteman*, 198 Ill. 2d at 480, 763 N.E.2d at 760; *Village of Bloomingdale*, 196 Ill. 2d at 490, 752 N.E.2d at 1096.

¶ 21 Section 2-201 of the Tort Immunity Act provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2010).

¶ 22 In section 2-201, the legislature immunized "liability for both negligence and willful and wanton misconduct." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 196, 680 N.E.2d 265, 273 (1997). Section 2-109 of the statute provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2010).

¶ 23 Our supreme court has held that the Tort Immunity Act sets up a two-part test to determine which employees may be granted immunity under section 2-201. First, an employee may qualify for immunity "if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion." (Emphases in original.) *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341, 692 N.E.2d 1177, 1181 (1998). Second, an employee who satisfies the first prong of the test must also have engaged in both the determination of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *Harinek*, 181 Ill. 2d at 341, 692 N.E.2d at 1181. Plaintiffs admit defendants hold positions that involve the determination of policy or the exercise of discretion. Thus, we focus on the second prong of the test.

¶ 24 Plaintiffs argue that defendants' duties were ministerial acts to which immunity did not attach. Specifically, plaintiffs claim that defendants were mandated by Board policy to act in response to the bullying incidents, without regard to the exercise of discretion.

¶ 25 We reject plaintiffs' claim. The acts or omissions of which plaintiffs complain constituted discretionary acts and policy determinations, not ministerial acts. Public policy decisions are "those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 472, 758 N.E.2d 848, 852 (2001); see also *Albers v. Breen*, 346 Ill. App. 3d 799, 808, 806 N.E.2d 667, 675 (2004) ("A school principal dealing with a disciplinary matter must balance competing interests–the confidentiality of his information source, the appropriate level of punishment, the concerns of all the children's parents, the impact of his decision on the student body generally–and make a judgment as to what balance to strike among them."). Plaintiffs do not argue that defendants were not in a position involving the determination of policy but only that defendants' acts or omissions were ministerial, and not discretionary. "[D]iscretionary acts are those which are unique to a particular public office, while

ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Township*, 167 Ill. 2d 466, 474, 657 N.E.2d 988, 993 (1995).

¶ 26        Section 27-23.7(d) of the School Code requires that each school district "create and maintain *a policy on bullying*." (Emphasis added.) 105 ILCS 5/27-23.7(d) (West 2010). In this case, the school district created Board Policy 7:180, "Preventing Bullying, Intimidation, and Harassment." The policy on bullying provides that the superintendent or a designee shall develop and maintain a program that fully implements and enforces the following Board policies: (1) "Harassment of Students Prohibited" (7:20), (2) "Student Discipline" (7:190), (3) "Restriction on Publications" (7:130), and (4) "Access to Electronic Networks" (6:235). "Full implementation" of the policy on bullying includes (1) "conducting a prompt and thorough investigation of alleged incidents of bullying, intimidation, harassing behavior, or similar conduct" and (2) "providing each student who violates one or more of these policies with appropriate consequences and remedial action." Williams stated in his affidavit that he designated to each attendance center principal the responsibility for implementing the Board policy on bullying at the building level.

¶ 27        Plaintiffs further reference an additional paragraph found in the policy, which states:

"The Superintendent or designee shall develop and maintain a program that *** [a]ctively involves students' parents/guardians in the remediation of the behavior(s) of concern. This includes ensuring that all parents/guardians are notified, as required by State law, whenever their child engages in aggressive behavior."

¶ 28        The Board policy assigns responsibility to the superintendent or his designee for the development and maintenance of a program that prevents students from engaging in bullying, intimidation, or harassment. Although the policy imposes general duties on the superintendent, or his designee, in the development and maintenance of a program, the policy does not mandate a particular response to a specific set of circumstances. The determination of whether bullying has occurred and the appropriate consequences and remedial action are discretionary acts under these facts. We find the acts or omissions of which plaintiffs complain constituted discretionary acts.

¶ 29        This court has previously addressed whether a school principal's actions concerning a bullied student were discretionary. In *Albers*, this court stated:

"Certainly the way that a principal handles an instance of bullying in his school falls within the definition; any student who has been sent to the principal's office could attest that he has broad discretion in how to handle such situations. Plaintiff [mother] recognized the uniqueness of the principal's function when her first response to [her son's] bullying problem was to report it to [the principal]. [The social worker], too, reported the allegations to [the principal] when she decided that something needed to be done to protect [the student]." *Albers*, 346 Ill. App. 3d at 808-09, 806 N.E.2d at 675.

See also *Harrison*, 197 Ill. 2d at 474, 758 N.E.2d at 852 (principal's refusal to let student leave school early was a discretionary act). We conclude that the acts and omissions of which plaintiffs complain constituted discretionary acts and policy determinations and, therefore,

defendants are immune under sections 2-201 and 2-109 of the Tort Immunity Act (745 ILCS 10/2-201, 2-109 (West 2010)).

¶ 30    Plaintiffs next argue that section 2-202 of the Tort Immunity Act provides a willful and wanton exception to the immunities otherwise provided by section 2-201 of the Tort Immunity Act. Section 2-202 states that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2010). "The determination of whether an officer is executing or enforcing a law is a factual one which must be made in light of the circumstances in each case." *Aikens*, 145 Ill. 2d at 286, 583 N.E.2d at 493. Applying the facts of this case as alleged in plaintiffs' second amended complaint, it is clear defendants were not executing or enforcing any law. Plaintiffs allege that C.H. was bullied by classmates and defendants failed to comply with the Board's policy on bullying. Plaintiffs have not alleged or shown how defendants' actions or omissions can be considered to be either the execution or enforcement of a law.

¶ 31    Moreover, no such exception for willful and wanton misconduct is stated in the text of section 2-201 (745 ILCS 10/2-201 (West 2010)). Our supreme court has stated that when the legislature intends to except willful and wanton misconduct from the provisions of an immunity statute, it has " ' "unambiguously done so." ' " *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 514, 848 N.E.2d 1030, 1041 (2006) (quoting *Village of Bloomingdale*, 196 Ill. 2d at 491, 752 N.E.2d at 1096, quoting *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391, 665 N.E.2d 808, 814 (1996)); see also *Chicago Flood Litigation*, 176 Ill. 2d at 196, 680 N.E.2d at 273 (where the legislature omitted an immunity exception for willful and wanton conduct from the plain language of section 2-201 of the Tort Immunity Act, the legislature must have intended to immunize liability for both negligence and willful and wanton misconduct). Accordingly, we reject plaintiffs' argument that section 2-202's immunity exception for willful and wanton misconduct should be applied to narrow the scope of defendants' immunity under section 2-201, since the plain language of section 2-201 contains no such exception.

¶ 32    Plaintiffs reliance on *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 864 N.E.2d 176 (2007), is misplaced. In *Murray*, the supreme court explained that a statute that is particular and relates to only one subject will prevail over one that applies to cases generally. *Murray*, 224 Ill. 2d at 233, 864 N.E.2d at 188. In *Murray*, the 13-year-old plaintiff was rendered a quadriplegic from a trampoline accident during an extracurricular lunch period tumbling class. *Murray*, 224 Ill. 2d at 217, 864 N.E.2d at 179. The supreme court determined that section 3-109 of the Tort Immunity Act (745 ILCS 10/3-109 (West 1992)), which specifically covered immunity for a person's voluntary participation in hazardous recreational activities–including trampolining–prevailed over sections 2-201 (745 ILCS 10/2-201 (West 1992)) (immunity for injuries resulting from act or omission in determining policy) and 3-108(a) (745 ILCS 10/3-108(a) (West 1992)) (immunity for injuries caused by failure to supervise an activity on or the use of any public property). Thus, the plaintiffs were entitled to rely on section 3-109's exception for willful and wanton misconduct, and the defendants could not rely on the more complete immunity provided by sections 2-201 and 3-108(a). *Murray*, 224 Ill. 2d at 234, 864 N.E.2d at 188-89.

¶ 33    Here, there is no provision in the Tort Immunity Act directly addressing the situation giving rise to plaintiffs' injuries. Plaintiffs were injured when C.H. was bullied by classmates and defendants failed to appropriately respond. Unlike trampolining, bullying is not specifically listed in any section of the Tort Immunity Act. Thus, in the case at bar, defendants' immunity from liability is not subject to the willful and wanton conduct exception found in section 2-202 of the Tort Immunity Act.

¶ 34    Plaintiffs also argue that section 24-24 of the School Code (105 ILCS 5/24-24 (West 2010)), and not the Tort Immunity Act, governs the extent of the immunity to which defendants are entitled. Section 24-24 provides that teachers or other educational employees enjoy the same immunity from suits by their students as a parent or guardian enjoys against suits by a child. 105 ILCS 5/24-24 (West 2010). Thus, plaintiffs argue, based on the School Code, educators are not liable to their students for ordinary negligent conduct but are liable for willful and wanton conduct. *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 173, 347 N.E.2d 705, 709 (1976). Plaintiffs argue that section 24-24 of the School Code prevails over section 2-201 of the Tort Immunity Act and, consequently, defendants here are not immune from a claim alleging willful and wanton misconduct. We disagree.

¶ 35    We rely upon the reasoning of our supreme court in *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 712 N.E.2d 298 (1999). In *Henrich*, a high school student had spine fusion surgery. The student's physician advised that he was permanently restricted from any contact sports in physical education class. The high school knew of this restriction, but less than a year after the surgery, a substitute instructor required the student to participate in a water basketball game during physical education class. The student was severely and permanently injured. He later filed a complaint alleging the school district was willful and wanton. *Henrich*, 186 Ill. 2d at 384-85, 712 N.E.2d at 300-01. The district filed a motion to dismiss, arguing that it enjoyed absolute immunity under sections 3-108(a) and 3-109 of the Tort Immunity Act (745 ILCS 10/3-108(a), 3-109 (West 2002)). The student responded that the school district had only limited immunity under sections 24-24 and 34-84a of the School Code (105 ILCS 5/24-24, 34-84a (West 2002)). *Henrich*, 186 Ill. 2d at 385, 712 N.E.2d at 301.

¶ 36    The supreme court concluded that the Tort Immunity Act shielded the school district from liability. *Henrich*, 186 Ill. 2d at 395, 712 N.E.2d at 306. Though the student argued that the specific provisions of the School Code prevailed over the general provisions of the Tort Immunity Act, that distinction was not dispositive: "[T]he plain language of section 3-108(a) of the Tort Immunity Act immunizes a local public entity's failure to supervise an activity on or the use of any public property ***. The legislature could not have made its intent any plainer." *Henrich*, 186 Ill. 2d at 391, 712 N.E.2d at 304. Further, construing the statutes together, the court stated that each stood "in its own sphere." *Henrich*, 186 Ill. 2d at 392, 712 N.E.2d at 304. The School Code immunity provision applies to both private and public schools; the Tort Immunity Act immunity provision applies only to public schools. *Henrich*, 186 Ill. 2d at 392, 712 N.E.2d at 304. The court reasoned that the legislature, therefore, intended to grant public schools and their employees greater protection than private schools and their employees. *Henrich*, 186 Ill. 2d at 392, 712 N.E.2d at 304. See *Arteman*, 198 Ill. 2d at 487, 763 N.E.2d at 764 (holding that sections 24-24 and 34-84a of the School Code

provided no immunity from the plaintiff's allegations that the school district failed to provide a student with safety equipment during physical education class, but that section 2-201 of the Tort Immunity Act did). Pursuant to *Henrich*, we conclude that section 2-201 of the Tort Immunity Act provides immunity to defendants for what is alleged here to be willful and wanton conduct.

¶ 37 Plaintiffs next contend that the Tort Immunity Act does not apply because their claims fall within a special duty exception. Because we find that the Tort Immunity Act fully immunizes defendants from plaintiff's allegations, a discussion of the special duty exception is unnecessary. See *Zimmerman*, 183 Ill. 2d at 46, 697 N.E.2d at 708 ("the special duty doctrine cannot, and was not intended to, contravene the immunities provided to governmental entities under the Tort Immunity Act"); see also *Harinek*, 181 Ill. 2d at 347, 692 N.E.2d at 1183-84 ("the special duty doctrine may not operate to impose liability upon a public entity after a court has found that entity immune from liability under the Tort Immunity Act").

¶ 38 While we are sympathetic to plaintiffs' claims and acknowledge the seeming harshness of the result, we are obligated to follow our supreme court's interpretation of the Tort Immunity Act and find defendants are immune to liability for the alleged acts or omissions. Because we resolve the instant case on immunity grounds, we need not address the additional issue of whether the trial court erred in granting defendants' motion to dismiss under section 2-615 of the Code.

¶ 39 III. CONCLUSION

¶ 40 For the foregoing reasons, we affirm the trial court's judgment.

¶ 41 Affirmed.