# Illinois Official Reports

## Appellate Court

---

**Castillo v. Board of Education of the City of Chicago*, 2018 IL App (1st) 171053**

---

| | |
|---|---|
| Appellate Court Caption | ELIZABETH CASTILLO, a Minor, by Her Mother, Esperanza Castillo, ESPERANZA CASTILLO, ROSALINO CASTILLO, MARIA CASTILLO, YESENIA CASTILLO, and ENRIQUE CASTILLO, Plaintiffs-Appellants, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-17-1053 |
| Filed | April 24, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-267; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David W. Hepplewhite, of David W. Hepplewhite, P.C., and Sheldon Minkow, of Minkow Domin, both of Chicago, for appellants.<br><br>Law Department of Board of Education of the City of Chicago, of Chicago (Ronald L. Marmer and Lee Ann Lowder, of counsel), for appellee. |

Panel                          JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Mason concurred in the judgment and opinion.

## OPINION

¶ 1     Elizabeth Castillo, a high school student, and her family sued the Board of Education of the City of Chicago (Board), after Estrella Martinez, a fellow student, physically attacked her off-campus. Castillo alleged that school officials failed to protect Castillo from Martinez's on-campus harassment and eventual off-campus attack. The trial court held that the Board was immune from suit.

¶ 2     We affirm because that is what the law requires. The Board's alleged failure to prevent on-campus harassment depended on discretionary decisions regarding school discipline. And its alleged failure to protect Castillo from an off-campus attack involves police protection. In both areas, the Board has statutory immunity. Finally, Castillo did not sufficiently allege that the Board spoiled evidence by not preserving a diary where she recorded Martinez's harassment.

¶ 3                                    Background

¶ 4     According to Castillo's suit, Martinez physically attacked her off-campus. Before the attack, Martinez had previously attacked Castillo on school grounds, in front of school officials, including once on the day of the off-campus attack. In the two years before the attack, Castillo's mother had spoken several times to school officials about Martinez harassing Castillo at school. Castillo's mother called the school just before the attack to complain about Martinez, but no one would talk to her. After the attack, Castillo's mother went to the school to retrieve the contents of Castillo's locker, including a diary in which her daughter had written about the harassment, but school officials refused to give Castillo's belongings to her mother, and the diary was never found.

¶ 5     Castillo alleged that the Board had been negligent by allowing Martinez to remain a student despite her conduct, failing to prevent Martinez's harassment or the attack by expelling her, calling the police or the girls' parents, or providing a safe place on school grounds for Castillo to wait and avoid Martinez, and failing to warn Castillo of Martinez's planned attack. Castillo also alleged that the Board had committed spoliation of evidence by losing, destroying, or failing to preserve her diary.

¶ 6     The Board moved to dismiss Castillo's complaint, arguing that it was immune because school officials had no duty to perform police functions by preventing Martinez's off-campus attack on Castillo and disciplinary matters are discretionary. The Board also argued that it had no duty to preserve Castillo's diary, that there were no facts alleging that school officials knew about the diary, and that it was not foreseeable that the diary would become important in the eventual lawsuit.

¶ 7     The trial court dismissed Castillo's complaint.

¶ 8                                    Standard of Review

¶ 9        We review a trial court's dismissal under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)) *de novo*, taking as true all well-pleaded facts and interpreting pleadings in the light most favorable to the nonmoving party. *Mulvey v. Carl Sandburg High School*, 2016 IL App (1st) 151615, ¶ 41.

¶ 10                                         Analysis

¶ 11       Castillo frames her brief around whether she sufficiently alleged a cause of action or a *prima facie* case against the Board. Like the trial court, we will assume that Castillo alleged that the Board had duties to protect her from Martinez.

¶ 12       Castillo's factual allegations fall into two categories: (i) the Board's failure to protect her from Martinez's harassment on school property (which, according to Castillo, happened in full view of school employees) and (ii) Martinez's off-campus attack on Castillo.

¶ 13                        Section 2-201 Immunity: School Discipline

¶ 14       Castillo argues that the Board's failure to discipline Martinez for her on-campus harassment violated the bullying-prevention statute (105 ILCS 5/27-23.7 (West 2016)) and the Board's own anti-bullying policy. The trial court held that the Board was immune under section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-201 (West 2016)), which states that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." Because the statute was enacted in derogation of common law, it must be strictly construed. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). Section 2-201 applies to employees performing discretionary functions, but not "ministerial" acts that require no discretion by the employee to implement a given policy. *Malinski v. Grayslake Community High School District 127*, 2014 IL App (2d) 130685, ¶ 8.

¶ 15       Castillo argues that section 2-201's immunity applies only to "policy-making discretion," not to the exercise of discretion in the implementation of policy. Courts have repeatedly rejected this argument and have applied section 2-201 immunity to school officials implementing anti-bullying policies similar to the one here. See *Mulvey*, 2016 IL App (1st) 151615, ¶¶ 47-48 (implementation of school's anti-bullying policy requires discretionary determinations of whether bullying occurred and appropriate consequences, not just ministerial acts); *Malinski*, 2014 IL App (2d) 130685, ¶¶ 12-13 (implementation of anti-bullying policy under bullying-prevention statute does not render school official's actions ministerial); *Hascall v. Williams*, 2013 IL App (4th) 121131, ¶ 25 (school officials must determine whether bullying has occurred and appropriate consequences, which are "discretionary acts and policy determinations").

¶ 16       Review of the Board's anti-bullying policy shows that its implementation requires both discretion and decision-making by school officials, at every level. Even as it defines bullying behavior, it cautions that the list is "illustrative and non-exhaustive" and directs school officials to consider "the student's intent, the frequency or recurrence of the inappropriate behavior, and whether there are power imbalances between the students involved." That is, a school employee could determine whether a behavior constitutes "bullying" even if the

behavior does not fall within the listed examples of "harassment, threats, intimidation" and the like.

¶ 17    The policy directs school employees to intervene in bullying incidents "in a manner that is appropriate to the context," and after investigation, to assign consequences "in a manner tailored to the individual incident, considering the nature of the behavior, the developmental age of the student, and the student's history of problem behaviors and performance." While the policy directs school employees to deal with bullying incidents, it assumes, and indeed mandates, discretionary decisions by employees. Like the policy in *Mulvey*, this policy is "discretionary in nature and does not mandate a specific response to every set of circumstances." *Mulvey*, 2016 IL App (1st) 151615, ¶ 48; see also *Hascall*, 2013 IL App (4th) 121131, ¶ 29 (school officials' alleged acts and omissions constituted discretionary acts and policy determinations, so officials were immune under section 2-201). It could hardly be otherwise. For the Board to promulgate a policy that would inhibit individual school officials from making their own determinations as to what constitutes bullying and the appropriate disciplinary response would be difficult, if not impossible, to establish.

¶ 18    Castillo relies on *Barr v. Cunningham*, 2016 IL App (1st) 150437, ¶¶ 3-4, where a student who had been injured during gym class sued the gym teacher for failing to require the students to wear safety equipment. The appellate court held that the gym teacher was not entitled to immunity under section 2-201 because the decision of whether to require safety equipment was not a policy-making decision. *Id.* ¶ 28. *Barr* was overturned by the Illinois Supreme Court on other grounds. *Barr v. Cunningham*, 2017 IL 120751. We reject its remaining analysis on the question of policy determination versus discretionary decision-making. *Hascall*, *Mulvey*, and *Malinski*—cases that also involve decisions under an anti-bullying policy—fit better factually with this case than *Barr*.

¶ 19    Further, Castillo argues that the Board does not warrant section 2-201 immunity because it violated the bullying-prevention statute. 105 ILCS 5/27-23.7(d) (West 2016). But this statute only mandates that every school district create a policy on bullying; it does not mandate that a school respond to a particular instance of bullying in a particular way. The Board complied with the statute by creating an anti-bullying policy, and so Castillo cannot evade section 2-201 immunity by relying on the statute alone.

¶ 20                            Section 4-102 Immunity: Police Protection

¶ 21    Next, we will address the Board's alleged failure to prevent Martinez's off-campus attack at the core of this case. The Board argues, and the trial court held, that the Board retains immunity from suit because Castillo alleged a failure to protect her from a crime—a public entity is not liable for failure to "provide police protection service." 745 ILCS 10/4-102 (West 2016).

¶ 22    The Board cites two cases for the proposition that school officials are immune from suit when a student is harmed off school property, even if school officials knew that violence was likely. In *Green v. Chicago Board of Education*, a high school student was shot and killed by a fellow student. 407 Ill. App. 3d 721, 723 (2011). Though school officials knew of rising tensions between rival student groups, the victim, Ruben Ivy, was required to leave school after dismissal. *Id.* A large group of armed individuals were waiting outside, and Ivy was shot. *Id.* Emily Green, the special administrator of Ivy's estate, argued that the school should have, among other things, notified police and provided safe passage in and out of the school, but

failed by dismissing students from school when there were armed people outside. *Id.* The appellate court held that the "police protection" clause of section 4-102 afforded the Board immunity, as Green's allegations "focus[ed] on security and police measures around the school." *Id.* at 728.

¶ 23 Similarly, in *Albert v. Board of Education of the City of Chicago*, 2014 IL App (1st) 123544, a student was killed in a fight on his way home from school. The appellate court followed *Green*, holding that the Board was immune from claims that it should have protected Albert after school and off-campus because the actions would be "police protection." *Id.* ¶ 56.

¶ 24 As in *Green* and *Albert*, Castillo alleges an attack after school and off school grounds and claims that the Board should have protected her from this attack.

¶ 25 Castillo attempts to distinguish *Green* and *Albert* by arguing that she has not alleged that the Board should have acted in the role of police to prevent Martinez's crime but, rather, that the Board should have protected her through "supervisory" actions, such as calling parents, calling the police, or allowing Castillo to remain at the school to avoid Martinez. According to Castillo, this would make section 4-102 inapplicable if Castillo could show that the Board had undertaken to "supervise an activity" but committed "willful and wanton conduct." 745 ILCS 10/3-108 (West 2016). *Green* rejected this precise argument. 407 Ill. App. 3d at 728 (finding that section 3-108 is not an exception to section 4-102, and Green's allegations focused on security measures, not failure to supervise activity). Further, Castillo has provided no case, and we have found none, distinguishing the actions she suggests as "supervisory" rather than "police." Finally, many of the "supervisory" actions the Board allegedly could have taken inevitably slide into the area of school discipline, which, as discussed, is covered by section 2-201 immunity.

¶ 26                                      Spoliation of Evidence

¶ 27 Castillo alleged spoliation of evidence, specifically, that the Board had a duty to preserve the contents of Castillo's school locker, including a diary in which Castillo recorded Martinez's harassment. Spoliation is a form of negligence, and the general rule is that there is no duty to preserve evidence. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 27. Castillo must show that an "agreement, contract, statute, special circumstance, or voluntary undertaking" gave rise to a duty by the Board to preserve the diary and that a reasonable person in the Board's position "should have foreseen that the evidence was material to a potential civil action." *Id.*

¶ 28 The claim fails on the second prong of foreseeability. Castillo has not alleged facts indicating that the diary's evidentiary worth would have been foreseeable by a reasonable person in the Board's position. There is no allegation that Castillo, or anyone else, told school officials that she was recording Martinez's harassment or that she even had a diary in her locker. Nor has Castillo explained why a reasonable school employee cleaning out Castillo's locker would recognize that the object contained the factual basis of an eventual lawsuit. Differentiating the diary from the normal locker contents of a high school student would have required the school employees to open and read it, which they certainly had no responsibility to do. Disposing of the locker contents may have been careless, but Castillo did not allege sufficient facts to show that the Board committed spoliation of evidence.

¶ 29            Affirmed.