KATHLEEN GRANDALSKI, a Minor, by Katherine Grandalski, her Mother and Next Friend, *et al.*, Plaintiffs-Appellants, v. LYONS TOWNSHIP HIGH SCHOOL DISTRICT 204, Defendant-Appellee.

First District (1st Division)   No. 1—97—2795

Opinion filed April 26, 1999.

2

Goldberg & Goldberg and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Margarita T. Kulys, of counsel), for appellants.

Franczek Sullivan, P.C., of Chicago (Edward N. Druck and Thomas Koutsouvas, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

On October 17, 1994, plaintiffs, Kathleen Grandalski, a minor, by Katherine Grandalski, her mother and next friend, and Dennis Grandalski, the minor plaintiff's father, filed a three-count complaint against defendant school district seeking damages for injuries sustained by the minor plaintiff, Kathleen Grandalski (Kathleen). After the trial court granted two prior motions to dismiss, the plaintiffs filed a second amended complaint. Count I of the second amended complaint alleged negligence on the part of the school district for failing to provide a hand belt as a safety device and for the care and treatment rendered to Kathleen after the accident. Count II alleged willful and wanton misconduct for failing to provide the safety equipment, failing to prevent Kathleen from performing the "flip-flop," and for the care and treatment rendered to her after the accident. Count III sought reimbursement of medical expenses pursuant to the Rights of Married Persons Act (Family Expense Act) (750 ILCS 65/15 (West 1994)). On June 16, 1997, the trial court dismissed, with prejudice, plaintiffs' second amended complaint based upon the immunity afforded under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 et seq. (West 1994)).

## Facts

On March 25, 1994, Kathleen Grandalski was injured when she fell on her head while performing a gymnastics maneuver during a physical education class at Lyons Township High School. At the time of her injury, Kathleen was a 15-year-old student. The class in which she was enrolled was a basic, introductory physical education class, which involved only basic gymnastics exercises. Kathleen, however, had begun gymnastics training herself at the age of three years and was participating in park district gymnastics competitions by the time she was five or six years old. The gymnastics maneuver that Kathleen was performing when she was injured is known as a "flip-flop." At the time of her injury, Kathleen had the ability to confidently execute an

unassisted flip-flop. She had learned to do a flip-flop, on her own, without a spotter, by the time she was seven or eight years old.

The class during which Kathleen was injured was on the last day for the grading period. The teacher was engaged with other students just before the end of the class. By that time, Kathleen had already been tested and had completed the requirements for the class. She began to perform gymnastics maneuvers on her own in another area of the gym. Kathleen successfully performed a flip-flop. The teacher observed Kathleen's successful performance. When Kathleen attempted another flip-flop, she was unsuccessful and fell on her head. After the fall, Kathleen sat up on the mat. The teacher attended to Kathleen and also had another student press the emergency button to summon the school nurse. Kathleen complained of pain. The teacher stayed with Kathleen until the school nurse came.

When the nurse arrived, Kathleen was still complaining of pain. The nurse conducted a routine examination, observing Kathleen's breathing, pulse and pupils, and concluded all three were normal. She also determined that Kathleen could move her extremities and that she was not feeling any tingling or numbness. Based upon this examination, Kathleen was taken to the nurse's office in a wheelchair and her mother was notified. Kathleen's mother then took her to an emergency room where Kathleen was diagnosed as having a cervical fracture. She was transferred by ambulance to Northwestern Memorial Hospital, where she eventually underwent a cervical fusion.

## Analysis

Plaintiffs raise several arguments as to why defendant is not immune from liability under the Tort Immunity Act. Our standard of review is de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993).

### Section 3—108(a) of the Tort Immunity Act

■ Section 3—108(a) of the Tort Immunity Act provides in pertinent part:

> "Except as otherwise provided by this Act *** neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." 745 ILCS 10/3—108(a) (West 1994).

Plaintiffs contend that this section of the Tort Immunity Act does not bar their claim because "they are not alleging that the school district was negligent in failing to supervise the gymnastics class" but instead claim they are alleging that the school district breached a separate and distinct duty to "provide adequate and safe equipment." A review of plaintiffs' complaint and their briefs filed in this appeal

unequivocally indicates that plaintiffs are alleging and arguing that the school district was negligent in failing to supervise the gymnastics class. While plaintiffs may truly believe that their allegations concern a school district's duty to provide safe and adequate equipment, they have failed to distinguish this duty from a teacher's separate and distinct duty to supervise. The decision to require a student to *use* a particular piece of equipment falls under the teacher's duty to supervise. The decision to *provide* the equipment in the first instance is that of the school district. We will discuss the school district's duty to provide safe and adequate equipment later in this opinion.

The Illinois Supreme Court recently interpreted section 3—108(a)'s applicability to a teacher's supervision in another case involving an injured student who sued a school district. *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998). The plaintiffs in *Henrich* alleged willful and wanton misconduct on the part of the school district for requiring plaintiff to participate in a water basketball game with an allegedly rough player, knowing that plaintiff had a lower back condition and had been permanently restricted by his surgeon from participating in contact sports. The *Henrich* court held that the plain language of section 3—108(a) of the Tort Immunity Act immunizes a public school district and public school teachers from liability for an injury caused by either negligent or willful and wanton misconduct. *Henrich*, 186 Ill. 2d at 394-95. In view of that plain language, the court concluded that it was not required to consider whether the School Code (105 ILCS 5/1—1 *et seq.* (West 1994)), which does not immunize willful and wanton misconduct, was more specific than section 3—108(a) of the Tort Immunity Act. As the *Henrich* court explained, "to hold that section 24—24 of the School Code controlled the disposition of [allegations of willful and wanton misconduct] would effectively delete the explicit language in section 1—206 of the Tort Immunity Act that applies section 3—108(a) to school districts." *Henrich*, 186 Ill. 2d at 394. While the holding in *Henrich* would seem to dispose summarily of the issues in the present case concerning any allegations of willful and wanton conduct with respect to the teacher's supervision[1] of Kathleen, plaintiffs here have raised arguments and cited to other sections of the Tort Immunity Act that were not at issue in *Henrich*.

---

[1] While the *Henrich* decision has rendered irrelevant the issue of whether the teacher here exhibited willful and wanton misconduct, we note that even if there were no such immunity for willful and wanton misconduct, it is unlikely that the outcome here would be any different. The Tort Immunity Act defines willful and wanton conduct, in relevant part, as "a course of action which *** shows an utter indifference to or conscious disregard for the safety

## Section 2—202 of the Tort Immunity Act

■ Despite *Henrich*'s holding that the express language of section 3—108(a) provides blanket immunity to a public school district, even for willful and wanton misconduct, plaintiffs attempt to circumvent this blanket immunity by way of section 2—202 of Tort Immunity Act. That section provides, in pertinent part, that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2—202 (West 1994). Plaintiffs contend that the teacher was "executing or enforcing" a law pursuant to section 2—202, that the "law" she was enforcing was section 24—24 of the School Code, and therefore, the school district is liable for the teacher's alleged willful and wanton conduct because it is not immunized by section 2—202. While it is true that the provisions of the Tort Immunity Act must be construed together, plaintiffs' argument is incorrect, as previous decisions have held section 2—202 as being insufficient to circumvent blanket immunity that is provided by another section of the Tort Immunity Act. See *Barnett v. Zion Park District*, 171 Ill. 2d 378, 665 N.E.2d 808 (1996); *Jamison v. City of Chicago*, 48 Ill. App. 3d 567, 570, 363 N.E.2d 87, 89 (1977).

In *Barnett*, the estate of a pool patron who drowned brought suit against the park district which owned and operated the swimming pool, alleging, among other things, willful and wanton misconduct on the part of the lifeguards. While the court ultimately decided that, pursuant to section 3—108(a), "the legislature must have intended to immunize liability for both negligence and willful and wanton misconduct" (*Barnett*, 171 Ill. 2d at 391-92, 665 N.E.2d at 815), the court first explained that "[s]ection 2—202 is not a general exception to all of the other immunities established by the Tort Immunity Act." *Barnett*, 171 Ill. 2d at 390, 665 N.E.2d at 814. The *Barnett* court clearly and unequivocally rejected the argument that the language "[e]xcept as otherwise provided by this Act" contained in section 3—108(a) incorporated the more limited immunity of a different section of the Tort Immunity Act, namely section 2—202, which did not immunize willful and wanton misconduct, and therefore, rendered section 3—108(a)'s immunity inapplicable to willful and wanton misconduct. *Barnett*, 171 Ill. 2d at 389-91, 665 N.E.2d at 814. As the *Barnett* court

of others." 745 ILCS 10/1—210 (West 1994). It is doubtful that a teacher exhibits willful and wanton conduct when she watches a student who is a seasoned gymnast, as evidenced in part by the student's successful completion of a gymnastics maneuver without a safety belt, when the teacher does not prohibit the student from performing the maneuver again.

explained, "[t]he plain language of section 3—108 is unambiguous." *Barnett*, 171 Ill. 2d at 391, 665 N.E.2d at 814; see also *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 381, 687 N.E.2d 1042, 1048 (1997) (immunities provided in the Tort Immunity Act operate independently of one another).

Interestingly, plaintiffs only mention *Barnett* in passing in an attempt to distinguish it by contending that in the present case "plaintiffs are not alleging that defendant was negligent in failing to supervise the gymnastics class." As we have already discussed, this contention is inaccurate. In any event, plaintiffs' endeavor to import the School Code back into the analysis through the use of section 2—202 is an attempt to contravene the Illinois Supreme Court's concern that a court's holding should not "effectively delete the explicit language in section 1—206 of the Tort Immunity Act that applies section 3—108(a) to school districts." *Henrich*, 186 Ill. 2d at 394.

## Section 24—24 of the School Code is Not a "Law" Covered by Section 2—202 of the Tort Immunity Act

Assuming *arguendo* that section 2—202 did provide an exception to the blanket immunity provided by section 3—108(a), we disagree with plaintiffs' characterization of section 24—24 of the School Code as a law to be executed or enforced and their contention that the teacher here was acting "in the enforcement or execution of the law." The phrase "executing or enforcing any law" contained in section 2—202 is not limited to law enforcement activities performed by police officers and the like, but instead "clearly applies to *any and all public employees*, and any act or omission by them in the execution or enforcement of *any* law." (Emphasis added.) *Arnolt v. City of Highland Park*, 52 Ill. 2d 27, 34, 282 N.E.2d 144, 148 (1972). While section 24—24 of the School Code can be characterized as a law and it does provide teachers with supervisory authority over students, it is not a law that is enforced in the sense contemplated by section 2—202. *Contra Mancha v. Field Museum of Natural History*, 5 Ill. App. 3d 699, 703, 283 N.E.2d 899, 903 (1972) (defendants were enforcing the School Code in maintaining discipline which included the supervision of the movement of the children in a school-related activity). Rather, section 24—24 of the School Code is a codification that grants to or confers on educators and school districts the same immunity that parents enjoy with respect to suits by their children. See, *e.g., Henrich*, 186 Ill. 2d at 388. While the statute does not confer immunity for willful and wanton misconduct, neither was it intended to "create" liability for such alleged conduct. Rather, the statute "grants educators the immunity that parents enjoy." See *Henrich*, 186 Ill. 2d at 388.

■ In *Barnett*, the court concluded that the "lifeguards were not executing or enforcing a law in any sense." *Barnett*, 171 Ill. 2d at 391, 665 N.E.2d at 814; see also *Aikens v. Morris*, 145 Ill. 2d 273, 285, 583 N.E.2d 487, 493 (1991) ("Arguably, *** the performance of any task while on duty is in enforcement or execution of the law. We do not believe, however, *** that the legislature intended such a result"). The *Barnett* court noted that neither the public health regulations nor their enabling statute prescribed *how* the lifeguards should supervise a swimming pool. *Barnett*, 171 Ill. 2d at 391, 665 N.E.2d at 814. That reasoning applies with equal force to the present case. Similar to the lifeguards in *Barnett*, the teacher here was not executing or enforcing a law in any sense, since section 24—24 of the School Code also does not prescribe *how* the teachers should maintain discipline. While it is true that the statute states that teachers stand in the relation of parents to pupils, the undisputed facts show that Kathleen's parents, like the teacher here, had allowed her to perform the gymnastics maneuver in question. In view of our supreme court's holdings in *Barrett* and *Henrich*, we conclude that since neither section 24—24 of the School Code nor section 2—202 of the Tort Immunity Act, individually, can be construed so as to defeat the immunity intended by the legislature as provided by the plain language of section 3—108(a), the same holds true when section 24—24 of the School Code and section 2—202 of the Tort Immunity Act are raised jointly.

## School District's Independent Duty To Provide Safety Equipment

■ We next address plaintiffs' argument that the school district breached its duty to provide adequate and safe equipment. The only allegation that relates to the direct, rather than vicarious, liability of the school district would be plaintiffs' allegation that defendant was negligent because it "[f]ailed to provide a hand belt as a safety device for students who were engaged in gymnastics as part of their physical education class thereby creating an unreasonable risk of head and neck injury." In support of their argument, plaintiffs cite *Palmer v. Mt. Vernon Township High School District 201*, 169 Ill. 2d 551, 662 N.E.2d 1260 (1996), *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 412 N.E.2d 447 (1980), and *Gerrity v. Beatty*, 71 Ill. 2d 47, 373 N.E.2d 1323 (1978). These cases, however, discussed the immunity and duties of school districts under the School Code, but their analyses did not involve the Tort Immunity Act. See *McGurk v. Lincolnway Community School District No. 210*, 287 Ill. App. 3d 1059, 1061, 679 N.E.2d 71, 72 (1997). A school district's duty to furnish safety equipment is separate and distinct from a teacher's duty to supervise the student's wearing or

use of safety equipment. *Palmer v. Mt. Vernon Township High School District 201*, 169 Ill. 2d 551, 561, 662 N.E.2d 1260, 1265 (1996). Thus, plaintiff's argument that the *teacher* should have required Kathleen to use a hand belt has no bearing on our analysis of the *school district's* duty to furnish equipment. We need not reconsider any allegations or facts that would relate to the teacher's separate duty, including whether the teacher failed to "provide" the hand belt.

## The School District Did Not Breach its Duty To Provide Safe and Adequate Equipment

■ Under the School Code, "a school district has an affirmative duty, where students are engaging in school activities, whether they are extracurricular, or formally authorized as part of the school program, to furnish equipment to prevent serious injuries. At the least, a school district should furnish helmets and face guards for a game such as football, where head injuries are common and severe." *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 434-35, 412 N.E.2d 447 (1980). The present case is distinguishable from *Lynch*, however, where it was undisputed that proximate cause of the plaintiff's injury was the school district's failure to provide equipment. Here, the school had provided the hand belts, but they were not typically used during the basic gymnastics class and were not implemented by the teacher for the maneuver performed by Kathleen. Any decision with regard to whether Kathleen should have been wearing a safety belt was a matter to be decided by the teacher who was supervising the class and would fall under the teacher's duty described earlier. See *Braun v. Board of Education of Red Bud Community Unit School District No. 132*, 151 Ill. App. 3d 787, 792, 502 N.E.2d 1076, 1080 (1986) ("'The board's failure to 'furnish' the scaffold cannot be a proximate cause of the injuries, for the scaffold was 'furnished' and available, though it was not implemented for the task. *** The scaffold was on the premises and, assuming the failure to use it was a proximate cause of plaintiff's injuries, that failure *** arose out of the student-teacher relationship").

There is an additional reason why the *Lynch* decision is distinguishable here. Although the activity in *Lynch*, as here, was not formally authorized as part of the school program, the *Lynch* court, in explaining its decision, emphasized the fact that the school administration was aware that the game was planned and that several teachers were coaching students for the game. That was not the situation here and plaintiffs could prove no set of facts that would indicate that the school administration was aware that the activity that Kathleen

10

engaged in, namely the flip-flop, was planned. Instead, it is undisputed that the gymnastics maneuver that Kathleen executed was not a part of the course curriculum but, instead, was a spontaneous act performed by Kathleen while the teacher was engaged with other students. That the *teacher* became aware of Kathleen's intention to perform the activity immediately prior to her doing the flip-flop is irrelevant. The teacher's knowledge cannot be imputed to the school district. Moreover, while physical education is a required part of the academic curriculum, and the basic gymnastics class was an activity connected with the school program, the activity in which Kathleen was engaged at the time of her injury was not a part of the gymnastics class or the school program.

## Section 2—201 of the Tort Immunity Act

■ It is well established that the School Code and the Tort Immunity Act are to be interpreted independently of each other. *Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367, 377, 539 N.E.2d 246 (1989). Section 2—201 of the Tort Immunity Act provides in relevant part: "[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1994). There is a split of authority amongst the districts as to whether the supply and use of particular equipment constitutes a discretionary act for which a school district would be immune from liability for negligence. See, *e.g., Thomas v. Chicago Board of Education*, 60 Ill. App. 3d 729, 377 N.E.2d 55 (1st Dist. 1978), *rev'd on other grounds*, 77 Ill. 2d 165, 395 N.E.2d 538 (1979) (furnishing of equipment is a function separate and apart from discretionary authority); *Bowers v. Du Page County Board of School Trustees District No. 4*, 183 Ill. App. 3d 367, 379, 539 N.E.2d 246, 254 (2d Dist. 1989) (school district is immune); *McGurk v. Lincolnway Community School District No. 210*, 287 Ill. App. 3d 1059, 1060, 679 N.E.2d 71 (3d Dist. 1997) (school district is immune).[2] In this case, the school district did provide hand belts. Thus, we need not further consider whether the immunity for discretionary acts applies to a school district with respect to its failure to furnish equipment since there was no such failure here.

_____
[2]While the court in *McGurk* distinguished negligence from willful and wanton misconduct on the part of the school district, neither is present in the instant case, where the equipment was furnished and was not claimed to be defective.

## Section 3—109 of the Tort Immunity Act

■ Plaintiffs additionally allege that the school district is liable to plaintiffs under section 3—109 of the Tort Immunity Act (745 ILCS 10/3—109 (West 1994)). Section 3—109 provides that public entities and employees are not liable to persons participating in hazardous recreational activities, but the immunity does not extend to willful and wanton acts that are the proximate causes of injury. 745 ILCS 10/3—109(a), (b) (West 1994). As already discussed, plaintiffs have failed to allege any willful and wanton misconduct on the part of the school district, other than the allegations regarding the teacher's supervision of the class.[3] Assuming *arguendo* that they had, however, we conclude that a compulsory high school physical education class is not "recreational" activity within the meaning of section 3—109 of the Tort Immunity Act. This court explained the difference between compulsory physical education and recreational activity in *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 666 N.E.2d 687 (1996). There, the court stated as follows:

> "Recreation is defined as 'refreshment of the strength and spirits after toil: DIVERSION, PLAY.' Webster's Third New International Dictionary 1899 (1986). Play 'suggests an opposition to work; it implies activity, often strenuous, but emphasizes the absence of any aim other than amusement, diversion, or enjoyment.' (Emphasis omitted.) Webster's Third New International Dictionary 1737 (1986). In contrast, physical education is defined as 'education in methods designed to promote the development and care of the body and [usually] involving instruction in hygiene and systematic exercises and in various sports and games.' Webster's Third New International Dictionary 1706 (1986). Thus, compulsory physical education and recreation have different aims: whereas the former seeks to instruct, the latter aspires merely to amuse. Accordingly, although some students may enjoy gym class, it cannot be said to be recreation." *Ozuk*, 281 Ill. App. 3d at 243-44, 666 N.E.2d at 690.

While the *Ozuk* court went on to discuss the applicability of section 3—106 of the Tort Immunity Act, which is not at issue here, the rationale as to why compulsory physical education is not recreation applies to the instant case. Because plaintiff was not engaged in "recreational" activity, section 3—109 of the Tort Immunity Act is inapplicable here.

Even if we were to conclude the activity here was "recreational," it was not "hazardous recreational activity" under section 3—109 of the Tort Immunity Act. Section 3—109 provides, in pertinent part, as follows: "(b) As used in this Section, 'hazardous recreational activity'

---

[3]Plaintiffs claim that they have also alleged willful and wanton misconduct on the part of the nurse, which will be discussed separately.

means a recreational activity conducted on property of a local public entity which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator." 745 ILCS 10/3—109(b) (West 1994). A basic gymnastics class is not the type of activity that falls under section 3—109. With respect to the flip-flop, this activity was not "conducted" by the public entity as envisioned by this statute. Instead, it was spontaneously performed by Kathleen.

## Section 6—105 of the Tort Immunity Act

■ Plaintiffs' final contention is that the defendant, by the actions of the teacher and the school nurse, can be held liable for rendering negligent medical care to the plaintiff after her injury occurred. Plaintiffs allege that the defendant was either negligent or acted with willful and wanton misconduct with respect to the care and treatment rendered to Kathleen after the injury, including allegations that the teacher and nurse failed to immobilize Kathleen and also permitted her to lie down. Plaintiffs further allege that the nurse permitted Kathleen to leave school without her neck being immobilized, failed to properly assess Kathleen's neck injury and failed to request appropriate medical intervention including transportation to a hospital by an ambulance. Defendant contends that section 6—105 of the Tort Immunity Act (745 ILCS 10/6—105 (West 1994)) provides immunity against plaintiffs' claims.

Section 6—105 of the Tort Immunity Act provides as follows:

"6—105. Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others." 745 ILCS 10/6—105 (West 1994).

Without exception, the immunity provided by section 6—105 applies to plaintiffs' allegations here. The alleged actions, even if true, were taken in connection with an evaluation of Kathleen's injuries. Moreover, the immunity provided by this section contains no exception for willful and wanton misconduct.

In any event, plaintiffs here have alleged no facts that would support an allegation that the teacher or the school nurse engaged in willful and wanton misconduct with respect to the care and treatment provided to Kathleen after her injury. The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not

intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1—210 (West 1994). "While the question of whether conduct is 'willful and wanton' is ultimately a question of fact for the jury [citation], the court must first determine as a matter of law whether the plaintiff has alleged sufficient facts such that a jury question concerning the willful and wanton nature of the defendants' conduct is created. [Citations.]" *Moran v. City of Chicago*, 286 Ill. App. 3d 746, 755, 676 N.E.2d 1316, 1323 (1997).

Accordingly, for all of the foregoing reasons, we affirm the judgment of the circuit court of Cook County dismissing plaintiffs' second amended complaint.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.