2020 IL App (2d) 190479-U
No. 2-19-0479
Order filed February 6, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MISTY JOHNSON, Special Administrator of the Estate of Marcus Marrell Price, a minor, deceased, | ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-L-271 |
| HIGHLAND ELEMENTARY SCHOOL and SCHOOL DISTRICT U-46, | ) ) ) ) | Honorable Susan Clancy Boles, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in dismissing the plaintiff's complaint where (1) claims based on a failure to provide medical care were immunized under section 6-105 of the Tort Immunity Act and (2) claims based on a failure to supervise were immunized under section 3-108 of the Tort Immunity Act because the allegations of the complaint failed to state a cause of action for willful and wanton conduct.

¶ 2    This case arises from the death of a fifth-grade student, Marcus Marrell Price. The death occurred after the decedent was left unsupervised in his classroom. The plaintiff, the decedent's mother Misty Johnson, as special administrator of the decedent's estate, brought a wrongful death

lawsuit against the defendants, Highland Elementary School (Highland) and School District U-46. The plaintiff alleged that the defendants were willful and wanton in failing to supervise the decedent and failing to provide appropriate medical care. The defendants filed a motion to dismiss the plaintiff's second-amended complaint. The trial court granted the motion to dismiss. The plaintiff appeals from this order. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On May 19, 2017, the 11-year-old decedent died in a classroom during school hours at Highland in Elgin. On January 3, 2019, the plaintiff filed a second-amended complaint pursuant to the Illinois Wrongful Death Act (740 ILCS 180/2.1 (West 2018)). In the complaint, the plaintiff alleged that, on May 19, 2017, the decedent was a fifth-grade student at Highland. Prior to that date, the plaintiff had informed the defendants that the decedent suffered from asthma and a seizure disorder. The decedent required an inhaler in the event of an asthma attack. The defendants' employees had witnessed the decedent experience a seizure at school on at least six occasions. The plaintiff alleged that the defendants promised parents that first aid would be provided to students injured during school hours on school property. The defendants' employees were trained by Safe Havens International that speed was paramount in responding to a crisis and that immediate life-saving action was required if they encountered a student that was not breathing.

¶ 5      The plaintiff further alleged that, on May 19, 2017, the decedent was unattended and unsupervised during school hours while he was playing in a classroom. During that time, while engaged in rough, physical activity, the decedent collapsed, hitting his head as he fell, and experienced seizure activity on the ground. The decedent was carrying an inhaler at the time, which fell out of his pocket as he fell to the ground. After the collapse, school personnel were called, but it was unknown how long the decedent was nonresponsive and not breathing before

school personnel were informed. At 11:33 a.m., emergency services (911) were called. The paramedics arrived at 11:40 a.m. and immediately started cardiopulmonary resuscitation (CPR).

¶ 6 The plaintiff alleged that the defendants acted willfully and wantonly by: (a) allowing the decedent to participate in rough physical activity in an unsupervised classroom despite his known medical conditions; (b) failing to recognize that the decedent was experiencing a medical emergency; (c) failing to take immediate lifesaving action despite training that required them to do so; (d) pursuing a course of action that resulted in a several-minute delay before a medical professional could provide aid to the decedent; and (e) violating school and district policy by failing to immediately notify the decedent's parents and emergency personnel of the incident; (f) failing to inform all school employees of the decedent's need for an inhaler in response to his asthma attacks and seizure disorder; (g and h) failing to administer appropriate first aid and CPR to the decedent following his collapse; (i) failing to locate and use the decedent's inhaler; (j) failing to promptly call 911; (k) violating the defendants' comprehensive safety and crisis response plan; and (l) failing to train all employees on appropriate responses to emergency medical situations. The plaintiff alleged that, as a result of these willful and wanton acts, the decedent died on May 19, 2017.

¶ 7 On February 19, 2019, the defendants filed a combined motion to dismiss the plaintiff's second amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). The defendants argued that the complaint should be dismissed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)) because their alleged conduct was afforded absolute immunity under section 6-105 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/6-105 (West 2018)), which established immunity related to an alleged failure to understand, diagnose, and

respond to a student's medical condition. The defendants asserted that the allegations of the complaint were based on a failure to examine the decedent and provide appropriate care, precisely the type of conduct immunized under section 6-105. The defendants further argued that the immunity was absolute, which negated any claims based on an alleged noncompliance with school policy or training.

¶ 8    The defendants further argued that the complaint should be dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)) because the plaintiff's allegations failed to state a claim for willful and wanton misconduct and, thus, they were immune from liability under section 3-108 of the Tort Immunity Act (745 ILCS 10/3-108 (West 2016)). Specifically, the defendants argued that the plaintiff did not allege any facts to suggest that the injury occurred, or that the decedent's medical condition presented itself, as a result of the unsupervised activity in the classroom. For example, there were no allegations that the decedent ever experienced an asthma attack or seizure when engaging in the alleged rough physical activity or that the decedent acted in a manner that should have placed the defendants on notice that he could have a seizure or asthma attack if left unsupervised. The defendants asserted that the plaintiff's allegations amounted to nothing more than a negligent supervision claim for which the defendants were immune under section 3-108 of the Tort Immunity Act. Finally, the defendants argued that the alleged failure to follow district policy or a formal response plan did not, as a matter of law, give rise to a claim for willful and wanton conduct.

¶ 9    On April 2, 2019, the plaintiff filed a response to the motion to dismiss. The plaintiff explained that she was seeking wrongful death damages for the defendants' failure to adequately supervise the decedent at school and failure to respond to his emergency. The plaintiff argued that the defendants' section 2-615 motion to dismiss should be denied because she had pleaded

sufficient facts to state a claim for willful and wanton conduct. She asserted that the decedent laid unresponsive and not breathing on the floor for an unreasonable amount of time before CPR was finally performed by responding paramedics. Further, the defendants knew that the decedent suffered from asthma and a seizure disorder, had witnessed six seizures at school, and failed to provide first aid in accord with specific training on how to respond to a child that was not breathing. The plaintiff asserted that at the 2-615 stage, she was only required to plead allegations that supported an inference of willful and wanton conduct. As such, she argued that dismissal under section 2-615 was improper.

¶ 10    The plaintiff also argued that the defendants' section 2-619 motion to dismiss should be denied because the defendants were not entitled to absolute immunity under section 6-105 of the Tort Immunity Act. The plaintiff asserted that she was not arguing that the defendants failed to make or conducted an inadequate physical examination. Rather, she alleged that the defendants were negligent in failing to respond appropriately to a "obvious medical emergency," despite specific training necessitating a timely response. She asserted that the decedent's condition did not require the type of examination contemplated by section 6-105 of the Tort Immunity Act and that dismissal under section 2-619 was thus improper.

¶ 11    On May 8, 2019, a hearing was held on the defendants' motion to dismiss the plaintiff's second amended complaint. At the hearing, the plaintiff acknowledged that the allegations of willful an wanton conduct, stated in sections (a) through (e) of the second amended complaint, related to the period of time before the teachers found the decedent on the ground, and were based on a failure to supervise. Sections (f) through (l) related to the period of time after the defendants found the decedent collapsed and were based on a failure to properly respond to a medical emergency. The plaintiff also acknowledged that section 6-105 of the Tort Immunity Act was not

applicable to the allegations based on the failure to supervise, since there was not an opportunity to examine at that point.

¶ 12    Following the hearing, the trial court granted the motion to dismiss with prejudice. As to the alleged failure to properly respond to a medical emergency, the trial court found the assertion that no examination was necessary due to the decedent's obvious medical condition to be without merit. The trial court noted that there were no allegations that the decedent was likely to suffer an asthma attack while he was having a seizure, or allegations of obvious injury such as blood, a gash to the head, gasping for air, or that the decedent normally had seizures after physical activity. Rather, the decedent's symptoms, including that he may not have been breathing, were invisible unless determined upon examination. Accordingly, the trial court found that the defendants' alleged failure to react appropriately to the decedent's emergency hinged on the defendants' alleged failure to adequately examine or assess the decedent's physical condition in order to formulate an appropriate response. The trial court concluded that the defendants' actions, related to the examination, assessment, and treatment decisions, were provided absolute immunity under section 6-105 of the Tort Immunity Act.

¶ 13    With respect to the failure to supervise, the trial court noted that for conduct to be willful and wanton, the defendants must have engaged in a course of action that showed an actual or deliberate intention to cause harm, or that if not intentional, showed an utter indifference to, or conscious disregard for, the safety of others or their property. The trial court found the allegations of the complaint insufficient to state a cause of action for willful and wanton conduct because there were no allegations that the defendants or its employees should have known that harm would occur without adult supervision. Specifically, the trial court noted that there were no allegations of prior instances where rough physical activity resulted in the decedent having a seizure or asthma attack

or both. The trial court also noted that the defendants immediately called 911 when they were aware that the decedent needed medical help and the paramedics arrived within seven minutes. The trial court found that failing to give the decedent an inhaler, alone, was not sufficient to state a claim for willful and wanton conduct. Finally, the trial court found that the defendants alleged failure to follow its safety response plan and/or training was not evidence of willful and wanton conduct, noting again that the defendants promptly called medical experts to treat the decedent. Following the trial court's ruling, the plaintiff filed a timely notice of appeal.

¶ 14                                  II. ANALYSIS

¶ 15    On appeal, the plaintiff argues that the trial court erred in granting the defendants' section 2-619.1 motion to dismiss her second amended complaint. Section 2-619.1 of the Code allows a party to move for dismissal under both sections 2-615 (failure to state a claim) and 2-619 (defects or defenses). 735 ILCS 5/2-619.1 (West 2018). A motion to dismiss brought under section 2-615 attacks the legal sufficiency of claims based on defects apparent on the face of the pleading. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 14. The issue turns on whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. In answering this question, we accept as true all well-pled facts and reasonable inferences from those facts. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47. A complaint should be dismissed under section 2-615 only if it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief, and we review the circuit court's ruling *de novo*. *Wilson*, 2012 IL 112026, ¶ 14.

¶ 16    Under section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2018)), the defendant admits the legal sufficiency of the claim but asserts that an affirmative matter appearing on the face of the

complaint defeats or avoids the effect of the claim. *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. Immunities provided by the Tort Immunity Act are affirmative matters properly raised by a section 2-619 motion to dismiss. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). A section 2-619 motion to dismiss admits the well-pleaded allegations of fact, but it does not admit conclusions of law and conclusory factual allegations unsupported by specific factual allegations in the complaint. *McIntosh*, 2019 IL 123626, ¶ 16. The question on a section 2-619(a)(9) motion to dismiss is whether there exists a genuine issue of material fact that should have precluded the dismissal, or absent the factual issue, whether the dismissal was proper as a matter of law. *Id.* ¶ 17. We review *de novo* a section 2-619 dismissal (*Van Meter*, 207 Ill. App. 3d at 368) and the trial court's judgment on a section 2-619.1 motion to dismiss (*Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 24).

¶ 17   The plaintiff's first contention on appeal is that the trial court erred in granting the defendants' section 2-619 motion to dismiss because the defendants were not entitled to immunity under section 6-105 of the Tort Immunity Act. Specifically, the plaintiff argues that her complaint did not allege that the defendants' failure to make a physical examination, or making an inadequate physical examination, was the cause of the decedent's death. Rather, she alleged that the defendants' liability was based on its failure to respond in accordance with its promised training or protocols to a patent medical emergency. The plaintiff argues that these allegations are not immunized by section 6-105 of the Tort Immunity Act.

¶ 18   Governmental units are liable in tort on the same basis as private tortfeasors, unless a valid statute addressing tort immunity imposes conditions on that liability. *Lloyd v. County of Du Page*, 303 Ill. App. 3d 544, 549 (1999). Under the Tort Immunity Act, the immunities afforded to units of local government "operate as an affirmative defense which, if properly raised and proven by the

public entity, precludes a plaintiff's right to recover damages." *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503 (2000).

¶ 19    Section 6-105 of the Tort Immunity Act provides:

"Neither a local public entity nor a public employee acting within the scope of his [or her] employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself[/herself] or others." 745 ILCS 10/6-105 (West 2018).

"By its plain terms, section 6-105 provides immunity from liability to a local public entity and its employees who have failed to make a physical or mental examination, or who have failed to make an adequate physical or mental examination." *Michigan Avenue*, 191 Ill. 2d at 505. This immunity applies to school employees and is an absolute immunity. *Grandalski ex rel. Grandalski v. Lyons Township High School District 204*, 305 Ill. App. 3d 1, 12 (1999) (section 6-105 contains no exception for willful and wanton conduct).

¶ 20    In arguing that section 6-105 is not applicable because no examination was required, since the decedent's medical condition was obvious, the plaintiff relies on *Grant v. Board of Trustees of Valley View School District No. 365-U*, 286 Ill. App. 3d 642 (1997), and *Alvarez v. Riesche*, No. 98-C-5552, 1999 WL 519383 (N.D. Ill. July 12, 1999). In *Grant*, a mother sued the school district after her son committed suicide. *Grant*, 286 Ill. App. 3d at 644. Her son, a student in the school district, had told other students at his high school that he was going to kill himself. Other students reported this to a school counselor. After the counselor spoke with the plaintiff's son, the counselor called the mother and told her to take her son to the hospital for drug overdose treatment. The

counselor did not inform the mother that her son had threatened to commit suicide. On the way to the hospital, the son jumped out of his mother's car. He later jumped off a highway overpass and killed himself. *Id.* at 643-44.

¶ 21    The mother subsequently filed suit against the school district, but the trial court dismissed the complaint, finding that the school district was immune from liability under section 6-105. *Id.* at 644. On appeal, the reviewing court reversed, holding that the school district was not immunized from liability under section 6-105. The reviewing court noted that the complaint did not seek liability for the school district's failure to examine the student or diagnose his condition. Rather, the complaint alleged that the school district, with knowledge of the student's intent to commit suicide, failed to call for medical assistance, failed to inform the mother of her son's intention, and failed to implement a suicide prevention program. *Id.* at 646.

¶ 22    *Alvarez*[1] involved a civil rights action arising out of a domestic dispute. *Alvarez*, 1999 WL 519383, *1. The wife alleged that her husband assaulted her and that police officers ignored her injuries and arrested her because of her husband's friendship with one of the officers. She filed a complaint against the city and the officers alleging, in part, a claim based on the failure to provide adequate medical care. *Id.* The district court held that the city and the officers were not immune from liability under section 6-105 of the Tort Immunity Act. *Id.* *10. The district court noted that section 6-105 would be applicable if the wife had only alleged suffering from a latent condition. However, the wife alleged that she had visible serious injuries which the officers ignored.

---

[1] Federal district court decisions are neither binding nor precedential. This is especially true when a decision is unreported. *County of Du Page v. Lake Street Spa, Inc.*, 395 Ill. App. 3d 110, 122 (2009).

Consequently, the district court held that the wife's claim fell outside the ambit of section 6-105 because it was premised on the existence of obvious serious injuries. *Id.* The district court explained that "[s]ection 6-105 speaks to liability flowing from a failure to examine, not to a failure to react to injuries that are patent." *Id.* (citing *Grant*, 286 Ill. App. 3d at 646).

¶ 23    We find the defendants' reliance on *Grant* and *Alvarez* unpersuasive. The plaintiff's reliance on these cases is premised on her assertion that the decedent was suffering from a "patent" medical emergency. The allegations of the complaint simply do not support this assertion. The complaint stated that the decedent generally suffered from epilepsy and asthma and had experienced seizures at school on previous occasions. However, there are no allegations that the defendants' school personnel were aware that the decedent was suffering from a seizure and/or an asthma attack on the day in question or that the decedent exhibited signs of these conditions. The allegation in the complaint is that the decedent was nonresponsive and not breathing before school personnel were informed. The fact that the decedent was nonresponsive and not breathing would have required a medical examination to determine the decedent's specific medical condition and an appropriate medical response.

¶ 24    We find this case more similar to *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324 (2008). In *Abruzzo*, a mother sued a municipality, alleging that emergency medical technicians who were dispatched to her son's father's home to provide medical care to her minor son, " 'a nonresponsive child who required CPR' " and who had a history of drug abuse, violated training principles and protocols when they left without examining him, providing any treatment, or preparing a " 'run sheet' " for the 911 call. *Id.* at 327-28. She alleged that her son died as a result of the city's willful and wanton conduct. The trial court dismissed the mother's action, finding that section 6-105 of the Tort Immunity Act applied. *Id.* at 329.

¶ 25    On appeal, the supreme court held that the limited immunity provision of the Emergency Medical Services (EMS) Act (210 ILCS 50/3.150(a) (West 2004)) applied over the Tort Immunity Act and reversed and remanded.  *Id.* at 348.  However, in assessing section 6-105 of the Tort Immunity Act, our supreme court concluded that it applied to the mother's complaint, because she had alleged that the city failed to evaluate or assess her son or otherwise provide any assistance. *Id.* at 333.  The court held that the "plain language" of section 6-105 granted "immunity for failing to perform a physical examination to determine whether a person has a condition constituting a hazard to that person's health or safety." *Id.*

¶ 26    In *Abruzzo*, the mother specifically alleged that when the paramedics arrived her son was nonresponsive and that, in failing to treat him, the paramedics violated training protocols. Similarly, in this case, the plaintiff alleged that the decedent was nonresponsive and that the defendants failed to follow protocols in not providing any assistance to her son.  However, the allegations of the complaint do not establish that the decedent was suffering from a known medical condition that would have required the performance of a specific protocol such as administering first aid, CPR, or his inhaler.  As in *Abruzzo*, because the decedent was nonresponsive, an evaluation would have been required in order for the defendants to determine the appropriate response.  The failure to evaluate or provide any assistance is precisely the type of conduct that is immunized under section 6-105. *Id.*  Moreover, section 6-105 also immunizes the defendants for failing to adequately diagnose and treat the decedent.  As such, to the extent the defendants did make an evaluation and erred in determining that the only appropriate response was to call 911, that conduct is also immunized.  See *Grandalski ex rel. Grandalski v. Lyons Township High School District 204*, 305 Ill. App. 3d 1, 12 (1999) (actions taken in connection with an evaluation of a

student's injuries are immunized under section 6-105). Accordingly, the trial court did not err in granting the defendants' request for dismissal under section 2-619.

¶ 27 The plaintiff's second contention on appeal is that the trial court erred in granting the defendants' section 2-615 motion to dismiss on the basis that the plaintiff failed to state a cause of action for willful and wanton conduct, an exception to the immunity provided in section 3-108(a) of the Tort Immunity Act ((745 ILCS 10/3-108(a) (West 2016)).

¶ 28 Section 3-108 of the Act (745 ILCS 10/3-108 (West 2016)), which provides limited immunity to a school district, states, in pertinent part:

"(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

(b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury."

"Willful and wanton" is defined in the Act as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2016). "This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." *Id.*

¶ 29    Willful and wanton conduct goes beyond mere negligence in that it requires a conscious choice by a defendant to either cause harm or to engage in a course of action with knowledge that it involves a risk of serious danger to another. *Doe v. Bridgeforth*, 2018 IL App (1st) 170182, ¶ 46. "A qualitative difference necessarily exists between willful and wanton misconduct and ordinary negligence. Willful and wanton misconduct should shock the conscience \*\*\*." *Oravek v. Community School District 146*, 264 Ill. App. 3d 895, 900 (1994). "When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not by merely labelling the conduct willful and wanton." *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 943 (1995). "One must consider the totality of the circumstances in deciding whether a defendant acted with utter indifference or conscious disregard." *In re Estate of Stewart*, 2016 IL App (2d) 151117, ¶ 75. A determination of willful and wanton conduct must be based on the specific facts of each case. *Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156, ¶ 11. While this determination is usually a question of fact for a jury to determine, a court may decide as a matter of law whether a plaintiff's allegations of willful and wanton conduct are sufficient to state a cause of action. *Id.*

¶ 30    The plaintiff argues that the allegations regarding lack of supervision state a cause of action for willful and wanton conduct. However, it is well settled that a teacher's mere act of leaving students unsupervised, without more, is not sufficient to establish willful and wanton conduct. *Jackson v. Chicago Board of Education*, 192 Ill. App. 3d 1093, 1100 (1989) (no willful and wanton conduct where students left unsupervised at school for up to 30 minutes); see also *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331, 335 (1981) (softball team members unsupervised for 15 minutes); *Albers v. Community Consolidated No. 204 School*, 155 Ill. App. 3d 1083, 1086 (1987) (students unattended in classroom for up to 10 minutes). "A teacher cannot

be required to watch the students at all times while in school." *Mancha v. Field Museum of Natural History*, 5 Ill. App. 3d 699, 702 (1972). A tremendous burden would be imposed on school districts and teachers if they were required to provide "constant surveillance of the children." *Id.*

¶ 31 To state a claim for willful and wanton conduct based on lack of supervision, a plaintiff must plead that the school "was aware or should have known that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm." *Jackson*, 192 Ill. App. 3d at 1100. In the absence of such knowledge, Illinois courts have consistently held that willful and wanton misconduct is not present. *Choice v. YMCA of McHenry County*, 2012 IL App (1st) 102877, ¶ 72. Courts have found a triable issue of material fact, in relation to a claim for willful and wanton conduct based on a lack of proper supervision, in cases where the plaintiffs have alleged that the defendants knew or should have known of specific, foreseeable, and probable danger arising from their lack of supervision. *Id.* ¶ 77.

¶ 32 In the present case, the plaintiff has failed to allege sufficient facts to establish that, in leaving the decedent's classroom unsupervised, the defendants acted with complete and utter disregard for the decedent's life or had knowledge of any imminent danger. The plaintiff's claims of willful and wanton conduct allege a general knowledge of asthma and a seizure disorder, and that the decedent had suffered seizures at school on previous occasions. However, there are no allegations that the decedent exhibited signs of these conditions when his class was left unsupervised, or that any planned activity in the classroom had previously resulted in the decedent suffering either a seizure or asthma attack. There are thus no allegations that suggest the defendants were aware of an impending seizure or asthma attack at the time the decedent's classroom was left unattended.

¶ 33     Further, the plaintiff argues that she properly stated a claim for willful and wanton conduct because she alleged that the decedent was left unsupervised for an "unknown" amount of time.  In terms of timing, it has been held that no willful and wanton misconduct exists if children are left unsupervised at school for up to 30 minutes.  See *Jackson*, 192 Ill. App. 3d at 1100.  As such, the allegation that the defendant was left unsupervised for an unknown amount of time is not sufficient to state a cause of action upon which relief may be granted.  *Edelman, Combs and Latturner v. Hinshaw and Culbertson*, 338 Ill. App. 3d 156, 168 (2003) (under Illinois fact pleading, the pleader is required to set out ultimate facts that support his or her cause of action).  In other words, the allegation that the decedent was left unsupervised for an unknown amount of time is not sufficient to establish that any alleged breach of the defendant's duty to supervise was willful and wanton. The plaintiff asserts that at the dismissal stage, she would not have means to know how long the decedent was left unsupervised.  However, nothing prevented the plaintiff from pursuing discovery before filing her second amended complaint.  In addition, the plaintiff did not move to replead prior to the dismissal, with prejudice, of her second amended complaint.

¶ 34     Accordingly, the plaintiff's complaint does not state a claim for willful and wanton conduct because the allegations do not suggest that the defendants knew or should have known of specific, foreseeable, or probable danger that the decedent would suffer an epileptic or asthma attack at the time he was left unsupervised.  Further, merely alleging that the decedent was left unsupervised for an unknown amount of time is not sufficient to state a cause action for willful and wanton conduct.

¶ 35     The plaintiff relies on *Gammon v. Edwardsville Community Unit School District No. 7*, 82 Ill. App. 3d 586 (1980), and *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19 (1984), in arguing that the lack of supervision qualified as willful and wanton.  In *Gammon*, a student was

injured when a classmate struck her in the eye. *Gammon*, 82 Ill. App. 3d at 588. A jury question was raised as to willful and wanton conduct because the school counselor knew the classmate had threatened the student but failed to inform other personnel of the matter and failed to supervise the students. *Id.* at 590. In *Hadley*, a student in an industrial arts class was trying to hammer a piece of scrap metal through a hole in an anvil when a metal chip flew into his eye causing injury. *Hadley*, 123 Ill. App. 3d at 20. The reviewing court held that a cause of action for willful and wanton conduct was properly stated where it was alleged that the teacher was present and observed the student hammering the metal, that the teacher knew or should have known that hammered metal could splinter, and that he failed to direct the student to wear goggles. *Id.* at 23. The court noted that the jury could have inferred " 'a reckless disregard for the safety of others *** after knowledge of impending danger***.' " *Id.* (quoting *Bernesak v. Catholic Bishop of Chicago*, 87 Ill. App. 3d 681, (1980)).

¶ 36    These cases are distinguishable from the present case. In these cases, the teacher and counselor were aware of specific impending threats of danger. In the present case, as stated above, there are no allegations that the decedent exhibited signs of an impending seizure or asthma attack, or that the classroom activity on that day had previously resulted in or exacerbated any such medical conditions. Accordingly, the plaintiff's reliance on these cases is unpersuasive.

¶ 37    The plaintiff also relies on *Stewart* in arguing that there were sufficient allegations to state a cause of action for willful and wanton conduct. In *Stewart*, a student with asthma collapsed in a classroom and died. *Stewart*, 2016 IL App (2d) 151117, ¶ 1. The student's mother filed a tort suit, alleging willful and wanton conduct against the teacher, as an agent of the school district. *Id.* ¶ 2. There was conflicting evidence as to whether the student died from an asthma attack or as a result of heart failure. *Id.* ¶¶ 41, 57. At the end of trial, a jury found in favor of the mother. *Id.* ¶ 3.

Following the denial of its posttrial motions for judgment notwithstanding the verdict or a new trial, the school district appealed. *Id.* ¶ 4.

¶ 38    On appeal, the school district argued, in part, that it was entitled to a new trial because there was insufficient evidence of willful and wanton conduct. *Id.* This court noted that, in addressing the question of willful and wanton conduct, factors courts have considered include whether there was: "(1) a deviation from standard operating procedures or a policy violation ***; (2) an unjustifiably lengthy response time ***; or (3) an unjustifiably inadequate response to a known danger ***." *Id.* ¶ 84. We noted that the teacher violated school policy by failing to call 911 immediately upon the student's collapse. The teacher waited to call 911 until instructed to do so by the school nurse, which was between 7 and 20 minutes after the student collapsed. *Id.* ¶ 88. We noted that the jury may have found that the "7- to 20-minute continuing failure to act" was not justifiable. *Id.* ¶ 94. Finally, we acknowledged that the teacher did take some action, *i.e.*, running to the student, turning him on his side to prevent choking, and directing other students to go get the nurse. *Id.* ¶ 107. However, after taking these actions, the teacher remained by the student for another 6 to 19 minutes, during which the teacher had a continuing duty to act. *Id.* ¶ 108. We noted that the jury could have reasonably found that the teacher's "subsequent inaction was so out of balance with the danger posed to [the student] that it amounted to willful and wanton conduct." *Id.* Accordingly, we held that there was sufficient evidence of willful and wanton conduct. *Id.* ¶ 118.

¶ 39    The plaintiff argues that, as in *Stewart*, her allegations sufficiently alleged willful and wanton conduct. The plaintiff asserts that the decedent was left unsupervised at the time of his collapse and it was unknown how long the decedent was nonresponsive and not breathing before the defendants were informed. Further, the defendants did not take immediate life-saving action

while the decedent was nonresponsive and not breathing, such as performing CPR or using his inhaler.

¶ 40    We find the plaintiff's reliance on *Stewart* to be unpersuasive. In *Stewart*, the teacher was aware that the student had collapsed and was experiencing a medical emergency. The teacher's failure to immediately call 911 was found to be an inadequate response to a known danger. In the present case, the allegations that the decedent was nonresponsive for an "unknown" amount of time does not establish a willful and wanton breach of the duty to supervise the decedent. Further, there are no allegations that 911 was not called immediately after the defendants were aware of the decedent's collapse. The complaint alleges that the defendants pursued a course of conduct that resulted in a "several-minute delay before a medical professional could provide instruction or aid to [the decedent]." The allegations indicate that the paramedics were called at 11:33 a.m. and arrived at 11:40 a.m. Based on these allegations, the several-minute delay was due to the time it took the paramedics to respond, and thus not to a delay in calling 911.

¶ 41    Additionally, in *Stewart*, the court noted that the failure to treat the asthma did not, by itself, constitute willful and wanton conduct, as the teacher was not a medical expert. *Id.* ¶ 101. Rather, the willful and wanton claim was primarily substantiated by the teacher's failure to call 911 within a reasonable time. *Id.* ¶ 116. Accordingly, the plaintiff's attempt to establish willful and wanton conduct based on an inadequate response to the emergency, such as a failure to perform CPR or administer the decedent's inhaler, is not supported by *Stewart*. In the present case, the allegations in the complaint simply do not show an utter indifference or conscious disregard for the decedent's safety. The defendants did not fail to act when they learned of the decedent's collapse. Rather, they called 911 and, as noted above, the allegations of the complaint do not establish an extended delay in doing so. Such action is not willful and wanton. See *Grant*, 286

Ill. App. 3d at 647 (while a failure to act could constitute willful and wanton conduct, dismissal of such a claim was proper because the defendant took some action, it called the student's mother).

¶ 42    Because the plaintiff's second amended complaint does not adequately plead allegations of willful and wanton conduct, section 3-108 of the Tort Immunity Act operates to immunize the defendants from liability for a failure to supervise.  See *Henrich v Libertyville High School*, 186 Ill. 2d 381, 391 (1998) (plain language of section 3-108 of the Tort Immunity Act immunizes against a failure to supervise).

¶ 43                              III. CONCLUSION

¶ 44    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 45    Affirmed.